REISINGER-SIEHLER COMPANY ET AL. *v.* WILLIAM H. PERRY.

[No. 36, April Term, 1933.]

192

*Decided June 21st, 1933.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*G. Randolph Aiken,* for the appellants.

*Charles E. Moylan* and *Michael Paul Smith,* with whom was *Theodore R. McKeldin* on the brief, for the appellee.

Pattison, J., delivered the opinion of the Court.

William H. Perry, the appellee, was on June 22nd, 1932, employed by the appellant Reisinger-Siehler Company. He had been in continuous employment there for fifty-two years. He was employed to look after the building generally, or, as expressed by him, he was "responsible for the building." His regular hours of employment were from 6 o'clock in the morning until 6 o'clock in the evening. In addition thereto, he was subject to call at any time, and was "liable to put in eighteen or twenty hours" a day. The additional hours of work were at times when he would be called from his home to his employer's store by a policeman because of some unusual condition of the lights at the store, or for some

other cause requiring his attention. This additional work was part of his duty; and this method of notifying him that his presence was needed at the store was the one adopted and used by the employer. He was called on such errands from fifteen to twenty times a year.

On June 22nd, 1932, William Perry obtained permission from his employer to stop work at 4.30 in the afternoon so that he might, with his wife, make a social call. On his return home, between 11 and 12 o'clock at night, he was told by his neighbors that a policeman had been there, apparently concerning the store. After receiving this message, he immediately walked down to the store, where he found the lights on and the back door open. He went through the building, turned out the lights, and locked up the store. Then he saw the policeman at the box and told him that everything was all right. Whereupon Perry started for his home, taking the shortest and most direct route. While he was crossing the intersection of Carroll and Scott Streets, about two squares from his home, he was struck by an automobile and injured.

After the accident, Perry applied to the State Industrial Accident Commission for compensation. The sole issue upon which the application was heard before the commission and upon appeal to the Baltimore City Court was: "Is the disability of William H. Perry the result of an accidental injury arising out of and in the course of his employment by Reisinger-Siehler Company?"

The State Industrial Accident Commission, after hearing evidence, allowed compensation to the claimant. From this ruling or action of the commission, the employer appealed to the Baltimore City Court, where the case was heard by the court sitting without a jury on the same issue, and upon the evidence heard by the commission. At the conclusion of the evidence, the employer and insurer offered three prayers, known as their A, B and C prayers. All of these asked for a directed verdict for the employer and insurer. The court was asked by the A prayer to rule as a matter of law that

194

there was no evidence in the case legally sufficient to entitle the plaintiff to recover; and by the B and C prayers the court was asked to rule as a matter of law that it appears respectively (1) from the "uncontradicted transcript of record" and (2) from the "uncontradicted evidence" that the "disability of the claimant was not the result of an accidental injury which arose out of and in the course of the said claimant's employment." These prayers were all rejected, and the court's answer to the issue hereinbefore stated was "Yes," thereby affirming the decision of the State Industrial Accident Commission. It is from that judgment of the court that the appeal in this case is taken.

As a general rule, employees who suffer injuries in going to or returning from their place of work are excluded from the benefits of the Workmen's Compensation Act (Code, 1924, art. 101, sec. 1 *et seq.,* as amended). But there are exceptions to this rule. *Harrison v. Central Construction Co.,* 135 Md. 170, 108 A. 874, 877; *State Compensation Ins. Fund v. Industrial Accident Commn.,* 89 Cal. App. 197, 264 P. 514; *Gibbs v. R. H. Macy & Co.,* 214 App. Div. 335, 212 N. Y. S. 428, 430, affirmed 242 N. Y. 551, 152 N. E. 423; *Messer v. Manufacturers Light & Heat Co.,* 263 Pa. 5, 106 A. 85; *Bisdom v. Kerbrat,* 251 Mich. 316, 232 N. W. 408; *Ohmen v. Adams Bros.,* 109 Conn. 378, 146 A. 825; *Cymbor v. Binder Coal Co. et al.,* 285 Pa. 440, 132 A. 363; *Voehl v. Indemnity Ins. Co. of North America,* 288 U. S. 162, 53 S. Ct. 380, 382, 77 L. Ed. 481; *Honnold on Workmen's Compensation,* vol. 1, p. 426. See also, annotations and cases cited in *L. R. A.* 1916A, 235, and *L. R. A.* 1918F, 907.

In *Harrison v. Central Construction Co., supra,* the employee was furnished by the employer free transportation to the place at which he worked. In that case, Judge Burke, speaking for this court, said: "When the injury occurs before the beginning or after the termination of work there are two general rules applicable to the question as to whether it arose out of and in the course of the employment. The first is that

an employee while on his way to work is not in the course of his employment. The second is that where the workman is employed to work at a certain place, and as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation to or from his work, the period of service continues during the time of transportation, and if an injury occurs during the course of transportation it is held to have arisen out of and in the course of the employment. * * * The second rule has the support of English and American cases." In that case the injury suffered by claimant in such transportation was held by this court to have arisen out of and in the course of his employment.

In *Voehl v. Indemnity Ins. Co. of North America, supra,* the court, speaking through Chief Justice Hughes, said: "The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. Ordinarily the hazards they encounter in such journeys are not incident to the employer's business. But this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact formula can be laid down which will automatically solve every case.' * * * While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act."

In *State Compensation Ins. Fund v. Industrial Accident Commn., supra,* the decedent had been working for his em-

ployer for many years as a salesman, reporting each morning for duty at the company's store. At the end of his day's work, on the day of the accident, he was instructed by one in authority to return to the store that night after he had finished his dinner at home, for the purpose of unlocking the store and admitting an electrician who would be there to repair a broken switch; to remain on the premises until the work was finished, and then to see that the store was locked. In accordance with his usual custom, he had left the store on that afternoon about 5 o'clock, gone to his home and had his dinner, and pursuant to his instructions returned to the store, unlocked the door, allowed the electrician to enter and remain there from 7 until 10 o'clock, at which time the electrician finished his work and departed. He then locked up the store, and boarded a street car to go home. On the way home, and while transferring from one car to another, he slipped and fell, sustaining injuries to his eye, which were first not supposed to be serious, but from which he died a few days thereafter. The court in that case said:

"It is well settled, as petitioner contends, that ordinarily employees who suffer injuries while going to or returning from their place of work are excluded from the benefits of said act, for it is held that they are not at that time rendering a service growing out of or incidental to their employment. * * * But the foregoing rule is not absolute. * * * 'Each case must be adjudged by the facts which are peculiarly its own. Industrial accidents are produced by so many varying circumstances that it is rather unusual to find any two or more cases that may be ruled by the same legal precedent.'

"As the commission held, the evidence here proves that this was not the ordinary case of an employee being injured while following his usual custom of going to or coming from the place where he works. On the contrary, it shows beyond doubt that decedent was injured while returning from a special errand which he was performing under the direction of his employer and which required him to leave his home

at night, after regular working hours, and called for a service outside of his regular duties as salesman, the sole purpose of which was to help his employer in the latter's business; and it was because of the relationship of employer and employee that the one requested the service and the other rendered it. Manifestly, under such circumstances, it would be a harsh and indefensible rule which would withhold compensation for an injury received by an employee in the performance of such an errand. * * *

"Obviously, the service decedent was performing on the night he was injured did not have its inception at the store upon his arrival there, nor did it end there immediately upon leaving. It began the instant he left his home on the errand to go to the store for the purpose of allowing the electrical work to be done (and, we may add, continued until he reached his home); * * * it was in effect held in *Sun Indemnity Co. v. Industrial Acc. Com., supra* (76 Cal, App. 165, 243 P. 892), that the 'going and coming' rule should not be held to apply where the employee was injured while primarily engaged in a business errand for his employer. * * *"

In *Gibbs v. R. H. Macy & Co., supra,* the claimant was a store detective and ordinarily labored in the store of her employer from 9 to 6 o'clock. On occasions it became necessary for her to attend court in various localities to give testimony in shop-lifting cases. On the occasion of her injury she was required to attend the Jefferson Market Court in the City of New York. Having done this, she took the subway to her home. After leaving the subway, while walking to her home, she was struck by a motorcycle and injured. The Supreme Court of the state, in delivering its opinion, said: "It is urged that, because claimant's duty had been fully performed when she left the Jefferson Market Court, she was not thereafter in the course of her employment. We cannot agree with this contention. * * * Concededly the claimant's duty to her master made necessary the journey from the Bronx to the Jefferson Market Court. Of that journey the homeward journey was a necessary counterpart.

If her employment caused the former, it equally caused the latter. The return journey, upon which she was injured, would not have been taken, except for an obligation of her employment. We think that she was in the course of her employment when injured." On appeal, the Court of Appeals affirmed the judgment of that court.

Whether a case falls without the rule depends upon the terms of the agreement by which the claimant is employed. If the agreement of employment is made to cover the time of his going to and returning from his place of work, then the case falls within the exception to the rule. Such an agreement, however, need not be an express agreement. It may be implied, from the nature and character of the work and employment. The question, therefore, whether a case is an exception to the general rule, depends upon its own particular facts.

The claimant in this case was employed regularly at his employer's store from 6 o'clock in the morning until 6 o'clock in the evening, to care for the building, as stated in the evidence. When his day's work was over, he was, of course, permitted to return to his home, but he was thereafter subject to call at any time to go to the store to care for any unusual conditions that might be found to exist there. It may be said that he had no time which he could absolutely call his own, for when he was wanted he was expected to be in a position where he could be reached and ready to go in the performance of his duty.

The record does not disclose any express agreement between him and his employer relative to the duties that he was to perform, or the remuneration he was to receive. Under his regular employment, his duties were to remain at the store during the day; but, in addition to this, he was, as we have said, when at home, subject to further duties when called upon. The times when these duties were to be performed were uncertain, as he was to go to the store only when unusual conditions existed there. What he was to do and the length of time he was to remain

there were equally uncertain. It was possible that when called from his home and possibly from his bed, at night, the work he found necessary to be done upon reaching the store would require his presence for but a few minutes, and it could hardly be said that this employment, for which he was to be remunerated, would cover only the period for which he was actually at work in or about the store. The work that he was called upon to do under these circumstances differs greatly from the regular employment of one employed at regular hours at a given place, and who at the expiration of the period of his work is free to serve himself as he pleases.

There was, we think, an implied agreement, from the nature and character of the employment of the claimant in the performance of the additional duties, that his employment was not to be restricted to the time in which he was at work at the store on such occasions. It was in the nature of an errand or mission on behalf of his employer, and when so treated his employment commenced at the time when he left his home to go to the store, and ended when he returned to his home.

"There is a tendency of the courts, indicated in the more recent cases, to give to such Compensation Acts an interpretation as broad and liberal in favor of the employee as their provisions will permit, in furtherance of the humane purpose which prompted their enactment." *In re Betts* (1918), 66 Ind. App. 484, 118 N. E. 551, 552; Annotations, 40 *A. L. R.* 1478; *Chandler v. Industrial Commission,* 55 Utah, 213, 184 P. 1020.

We discover no error in the ruling of the trial court, and its judgment will be affirmed.

*Judgment affirmed, with costs.*

BOND, C. J., and PARKE, J., dissent.