(No. 54969

JERRY WOLLAND, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (City of Peoria, Appellee).

*Opinion filed April 16, 1982.*

SIMON and WARD, JJ., dissenting.

Ronald Hanna, of Hamm & Hanna, Ltd., of Peoria, for appellant.

McConnell, Kennedy, Quinn & Johnston, Chartered, of Peoria (Charles D. Knell, of counsel), for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Claimant, Jerry Wolland, a Peoria policeman, sought compensation under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, pars. 138.1 *et seq.*) for injuries sustained when his service revolver accidentally discharged. The arbitrator denied compensation, finding claimant "failed to prove that he sustained accidental injuries arising out of and in the course of his employment." That decision was affirmed by the Industrial Commission, and confirmed by the Peoria County circuit court. Claimant appealed pursuant to our Rule 302(a). 73 Ill. 2d R. 302(a).

The proof indicated that on September 11, 1979, claimant and several fellow officers went off duty at 4 p.m. and met on a friend's boat where claimant drank about three beers between 4 and 6 p.m. A backyard barbeque was planned for later that evening at the home of Officer Koenig just outside the Peoria city limits. At 6 p.m. claimant and Officer Koenig went to pick up the latter's girlfriend and stayed at her apartment for about an hour and a half, during which claimant drank two more beers and a shot of schnapps. Claimant, driving his truck, and Officer Koenig, driving his motorcycle, then went to the Koenig home. Officer Koenig testified that claimant did not appear to be under the influence of alcohol at this time. They arrived at the house about 8 p.m. While Officer Koenig prepared the charcoal, claimant took off his coat and removed his handcuffs from his belt. He testified that as he attempted to pull his weapon from the holster it "went off," the bullet entering his lower right calf. Both the weapon and the holster were equipment approved by the Peoria police department. Claimant testified that as he was removing his coat it got caught on his belt. He "felt a slight tug" and thought the coat cocked the gun, which then fired as a result of touching his belt or his finger. He also estimated that the hammer required about a one-pound pull to cock it and that the weapon was not supposed to fire if the hammer was hit but rather only if the trigger itself was "pulled or knocked." He did not remember touching the trigger. However, hospital records introduced into evidence note that "[t]he patient states that his 38 caliber revolver accidentally went off while he was cleaning it."

It was stipulated that the rules governing the conduct of the city and its police officers authorized an annual allowance for carrying a weapon off duty, and testimony established that the amount of the allowance was $125. The 1972 rules manual required that "[o]fficers shall go

armed at all times whether on or off duty." An officer is "off duty" when not employed during the regular assigned hours, but an officer is "subject to duty as needed." The rules also require that "[w]hen 'off duty', they [officers] shall be responsible for taking proper police action, according to the circumstances, on any matter coming to their attention at any time." The deputy superintendent of police testified that the rules manual had not been updated to include several verbal agreements between the superintendent of police and the police benevolent association, one of which apparently removes the requirement that an officer carry his weapon when outside the city limits.

The question presented on these facts is whether the decision of the Commission that claimant's injuries did not arise out of and in the course of his employment as a police officer for the city of Peoria was contrary to the manifest weight of the evidence. Claimant, relying on the rule which required him to carry his weapon even while off duty and upon *County of Peoria v. Industrial Com.* (1964), 31 Ill. 2d 562, maintains that since carrying the weapon was an integral duty of his employment the injury is compensable.

Respondent argues, relying upon *Siens v. Industrial Com.* (1981), 84 Ill. 2d 361, that claimant was not "in the course of" performing police duties in that neither the *time, place* nor *circumstances* of the injury were related to police work. See, *e.g., Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361; *cf. Loyola University v. Industrial Com.* (1951), 408 Ill. 139 (employee who lived on premises and "on call" 24 hours, who was injured on the premises but during off-duty hours and not while performing duties, held not entitled to compensation).

Police claimants offering the argument that they are "on duty" 24 hours a day have met with mixed success in other jurisdictions. In cases where an off-duty officer is injured while actually performing a police function, com-

pensation is uniformly awarded. (See, *e.g., Kelly v. County of Nassau* (1977), 58 App. Div. 2d 681, 395 N.Y.S.2d 733; *Petrocelli v. Workmen's Compensation Appeals Board* (1975), 45 Cal. App. 3d 635, 119 Cal. Rptr. 620; *Krasnoff v. New Orleans Police Department* (La. App. 1970), 241 So. 2d 11; *King v. City of Clinton* (Mo. App. 1961), 343 S.W.2d 185.) Where, however, the off-duty officer was not performing a police function when injured, compensation has been denied in: *City of Coral Gables v. Williams* (Fla. App. 1980), 389 So. 2d 1212 (injury occurred outside city); *Mayor of Baltimore v. Jakelski* (1980), 45 Md. App. 7, 410 A.2d 1116; *Rogers v. Industrial Com.* (Colo. App. 1978), 574 P.2d 116; *Walker v. State Accident Insurance Fund* (1977), 28 Or. App. 127, 558 P.2d 1270; *State Compensation Insurance Fund v. Workmen's Compensation Appeals Board* (1973), 29 Cal. App. 3d 902, 106 Cal. Rptr. 39; *McKiernan v. City of New Haven* (1964), 151 Conn. 496, 199 A.2d 695; *Simerlink v. Young* (1961), 172 Ohio St. 427, 178 N.E.2d 168; *Blackley v. City of Niagara Falls* (1954), 248 App. Div. 51, 130 N.Y.S.2d 77; *Baughman v. City of Omaha* (1943), 142 Neb. 663, 7 N.W.2d 365. These cases all involved the "going and coming" rule. Compensation was awarded to officers "going and coming" in: *Toomey v. City of Portland* (Me. 1978), 391 A.2d 325 (even though accident occurred outside city limits); *Abshire v. City of Rockland* (Me. 1978), 388 A.2d 512; *Workmen's Compensation Appeal Board v. DelCimmuto* (1976), 23 Pa. Commw. Ct. 43, 350 A.2d 459 (uniformed security guard); *Collier v. County of Nassau* (1974), 46 App. Div. 2d 970, 362 N.Y.S.2d 52; *Director of Finance v. Alford* (1973), 270 Md. 355, 311 A.2d 412 (officer called to work in emergency); *Warg v. City of Miami Springs* (Fla. 1971), 249 So. 2d 3; *Jasaitis v. City of Paterson* (1959), 31 N.J. 81, 155 A.2d 260; *Sweat v. Allen* (1941), 145 Fla. 733, 200 So. 348; *cf. Chambo v. City of Detroit, Police Department*

(1978), 83 Mich. App. 623, 269 N.W.2d 243 (where court denied compensation because accident occurred outside city limits but indicated that a different result would be reached if the accident occurred within the city).

Professor Larson (1 A. Larson, Workmen's Compensation sec. 16.12 (1978)) does not regard the fact that the employee is on call 24 hours per day as sufficient to render compensable those injuries which would otherwise come within the normal "going and coming" rule.

Claimant also relies upon the Missouri appellate court's decision in *King v. City of Clinton* (Mo. App. 1961), 343 S.W.2d 185, holding that where a uniformed officer was injured by the accidental discharge of his weapon, which occurred when he tripped on his back porch as he was leaving for work, the injury arose from his employment because of the risk inherent in carrying the weapon. Because officers were required to be armed at all times, the court there held that the officer was "actively performing a duty of his employment" even though his actual duty hours had not yet begun.

Two of this court's decisions have dealt with injuries sustained from accidental, self-inflicted gunshot wounds. In *Marshall v. City of Pekin* (1916), 276 Ill. 187, this court reversed an award by the Industrial Board but did not reach the question of "arising out of and in the course of" employment because the officer was not engaged in an extrahazardous occupation as defined by the Act nor had the city yet elected coverage under the Act. More recently in *Siens v. Industrial Com.* (1981), 84 Ill. 2d 361, we affirmed the denial of compensation to a village marshal who sustained shotgun wounds to his leg when the encased gun accidentally discharged as he pushed it over the seat of his car. In that case we held that the Commission's decision that the marshal did not prove that his injury arose out of and in the course of his employment was not against the manifest weight of the evidence. We noted that

although a peace officer may be entitled to carry a weapon at all times, "it does not necessarily follow that every injury suffered by a peace officer is compensable. Any injury must still be incidental to one's employment as a peace officer." (84 Ill. 2d 361, 364.) Since "he was preparing to pursue a diversion unrelated to his job with the village"—going duck hunting—"[t]he injury he suffered did not occur in the course of his employment." (84 Ill. 2d 361, 365.) In *Siens* we distinguished *County of Peoria v. Industrial Com.* (1964), 31 Ill. 2d 562, a case which claimant argues supports his claim, because the deputy there, although "off duty," was engaged at his superior's direction in aiding a distressed motorist, "normal, incidental functions of all deputy sheriffs" (31 Ill. 2d 562, 566), when he was struck by a passing automobile and killed.

While the Commission, in view of the conflict between claimant's testimony and the hospital records, may have simply decided claimant had not met his burden of proof, we believe its decision appropriate, assuming the injury occurred as claimant testified. While, in those circumstances, claimant's case would fall between *Siens* and *County of Peoria,* it is, in our judgment, much closer to the former. As in *Siens,* claimant was engaged in a diversion totally unrelated to his employment as a police officer, and had, in fact, been so engaged for several hours prior to his injury. Concededly the rules required him to carry his weapon while in the city, but claimant was not in the city at the time the gun discharged. Too, the case for compensation is significantly more persuasive when the activity in which the officer is injured in off-duty hours is one, as in *County of Peoria,* in which he might normally be engaged during on-duty hours.

We do not intend to suggest that carrying a weapon is not incidental to employment as a law-enforcement officer or that an accidental shooting of one's self would never be

compensable. We simply hold that in the circumstances of this case the Commission's decision that claimant's injury did not arise out of and in the course of his employment is not contrary to the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Peoria County, confirming the decision of the Industrial Commission, is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

I do not agree that claimant Jerry Wolland's injuries are placed beyond the pale of compensability by the fact that they occurred outside the city limits and outside the strict scope of his duties as a policeman. I would find that his accident was work related, as it was caused by the gun which the terms of his employment clearly required him to wear at all times.

An employee's injury, in order to be compensable under our Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.2), must arise both "out of" and "in the course of" his employment. (See, *e.g., Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 367.) It is not clear from the majority opinion which of these two requisites it found unmet. An injury " ' "arises out of" one's employment if its origin is in some risk connected with or incident to the employment, so that there is a causal connection between the employment and the accidental injury.' " (66 Ill. 2d 361, 366, quoting *Jewel Companies, Inc. v. Industrial Com.* (1974), 57 Ill. 2d 38, 40.) The injury arises "in the course of" the employment if it occurs during the time of the employment, at a place where the worker may reasonably be expected to be in the performance of his duties, and while he is fulfilling those duties or is engaged in something incidental thereto (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 367; *Wise v. Industrial Com.* (1973), 54 Ill. 2d

138, 142); but this test is fulfilled even in cases where the worker is not actually working but has been placed somehow by the employer in a position where the employee might "reasonably be expected [to] encounter and undertake" the hazard which caused the injury. (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 369.) In *Scheffler,* a case cited by the majority, a greenhouse employee, who was injured while sitting on a gutter overhanging another person's swimming pool while on her lunch break, established only that the employer permitted use of the pool on hot afternoons and that few lounging places around the pool other than the gutter were available or provided; the court ruled that that was all she was required to show. In *Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272, this court held that, where the worker showed that it was customary for employees to climb onto the employer's roofs for fresh air during the workday, the worker was entitled to recover under the Workmen's Compensation Act for injuries sustained while on the roof even though the employer never knew he was there and never acquiesced in the use of the particular roof from which the claimant fell.

From the facts as they appear in the record, Officer Wolland's injury clearly arose "out of" his employment. The causal chain could not be simpler. Peoria's rules manual for police essentially placed all of its policemen, including Wolland, on 24-hour call, certain hours of which were specified as on-duty hours. The manual required, in specific terms, that each officer "go armed at all times" in aid of the 24-hour call, and the uncontroverted testimony was to the effect that a verbal agreement abating this duty for time spent outside the city limits was left out of the manual. Claimant was entitled to assume that the omission meant that he had to remain armed within the city limits or without. Wolland was so armed when he arrived at the home of Officer Koenig (35 feet outside the

Peoria city limits), and he suffered his injury, through no fault of his own, when his gun went off as he was trying to either clean it or remove it from its holster. No intervening event broke the causal chain. But for the employment, no gun would have been worn; but for the gun, no injury would have occurred.

Similarly, it is not possible, on these facts, to maintain that the officer had not been placed in a position where he might "reasonably be expected [to] encounter" the danger that his gun might go off by accident while he was not on call but was nonetheless wearing it. The Peoria rules manual for police contemplated that Peoria policemen would wear their guns on duty or off, wherever they might be. A consequence of that requirement is that one would expect that it would be necessary periodically to remove the gun for cleaning or to allow its wearer to sleep, if nothing else. Surely the guns have to be taken off at some time. As long as the Peoria officers were acting reasonably, and there is no evidence Wolland was not acting reasonably in handling his gun when he took it off, it is not too much to expect that when their guns go off, they not go off smoking. The majority admits that Wolland's case for compensation would be strong had he been on duty when the accident occurred. But to limit compensation to gunshot wounds suffered by on-duty employees would ignore the actual and foreseeable extent of the hazard that is created when the continued carrying of a gun is made a condition of the employment.

The majority cites a number of cases, most of them from other States, in which policemen lost workers' compensation suits for injuries sustained on the job. In all of these cases the injury sustained by the claimant was outside the scope of the risk created by the employment, so that it was possible to say that the accident was not "in the course of" the employment. In *Siens v. Industrial Com.* (1981), 84 Ill. 2d 361, the Illinois case relied on most

heavily by the majority, the claimant was the town's only policeman as well as its maintenance man. He was accidentally shot by his own shotgun while preparing to go hunting and, as he claimed, to repair a broken water main. None of the townspeople seemed to know where he was going. There was no regulation requiring him to carry a shotgun even while he was acting as the village marshal. He thus carried the gun by choice. The court properly found that his injury was not work related, especially as the only "work" he could possibly have been doing when he was injured was in his capacity as maintenance man rather than as marshal. With one exception, none of the out-of-State cases cited by the majority as denying compensation involved gunshot wounds. They involved injuries to police officers on the public streets while on their way to work: the denials were based, as the majority notes, on the "going-and-coming rule," which is predicated on the idea that an injury cannot meaningfully "arise from" an employment if it derives from a danger " ' "common to all mankind, or to which the public at large is exposed" ' " (*Mayor of Baltimore v. Jakelski* (1980), 45 Md. App. 7, 9, 410 A.2d 1116, 1118). By contrast, guns are carried on the person by only a few people, primarily policemen; thus the "going-and-coming rule" has no application to the instant case. Interestingly, the only case mentioned by the majority opinion or the litigants whose facts are similar enough to those of the instant case to permit easy comparison is *King v. City of Clinton* (Mo. App. 1961), 343 S.W.2d 185, in which plaintiff's service revolver discharged and injured him while he was leaving his home to go to work. The court held the injury compensable on the theory that a revolver is an abnormally dangerous instrument whose potential for causing harm is readily apparent; it noted that, as in this case, the policeman was required to have a gun immediately accessible at all times. I suggest the majority should have relied on *King* as precedent and

rejected *Siens,* which provides only the most superficial factual similarity to this case.

What makes this case distinctive is not that the injuries occurred a few feet outside the Peoria city limits or while the officer was off duty and relaxing, but that they eventuated from a risk that was caused by the employment and was contemplated as being a continuing part of the work. By wearing his gun in his holster while at the backyard barbeque, claimant was doing something which people do not normally do, and which he probably would not have been doing had it not been for the police rules manual. Instead, he was serving his master in his off-duty capacity: he was doing what he was supposed to be doing, in the place where he was supposed to be, with the purposes of the master in mind. The injury would have been compensable had he been on duty, as there would then be no doubt that the master would be answerable for the servant's harm. (*Loyola University v. Industrial Com.* (1951), 408 Ill. 139, 144.) I see no basis for treating this case differently.

JUSTICE WARD joins in this dissent.