690 A.2d 990

**MONTGOMERY COUNTY, Maryland**

v.

**Pamela J. WADE.**

**No. 7, Sept. Term, 1996.**

Court of Appeals of Maryland.

March 14, 1997.

4

John S. Joseph, Assistant County Attorney (Charles W. Thompson, Jr. County Attorney; Joann Robertson, Senior Assistant County Attorney, all on brief), Rockville, for Petitioner.

Alan B. Gross (Berman, Sobin & Gross, on brief), Gaithersburg, for Respondent.

Martha L. Handman, Gaithersburg, Amicus Curiae, for Fraternal Order of Police, Montgomery County Lodge 35, Inc.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ., and ROBERT C. MURPHY, Judge (retired), Specially Assigned.

KARWACKI, Judge.

The principal issue presented in this case is whether an injury sustained by an off-duty police officer while operating a

patrol vehicle for personal purposes as permitted by departmental regulations is compensable under the Maryland Workers' Compensation Act. Specifically, Petitioner, Montgomery County, seeks to classify the injury suffered by Respondent, police officer Pamela Wade, as falling without the contemplation of Maryland Code (1991 Repl.Vol.), §§ 9–101(b) and 9–501 of the Labor and Employment Article (LE),[1] and thus, not compensable as an accidental injury within the meaning of those statutes. For the reasons recited below, we hold that Wade's injuries fall within the relevant statutory framework and shall affirm the judgment of the Court of Special Appeals.

### I.

On September 4, 1988, Officer Wade, while not on scheduled duty or in uniform and while operating her personal patrol vehicle, was hit from behind by another vehicle. At the time of the accident, Officer Wade was on her way to her mother's home; her grandmother was a passenger in the car. Officer Wade sustained upper body injuries that ultimately necessitated surgery. Thereafter, on October 18, 1990, she filed a claim with the Workers' Compensation Commission (hereinafter "the Commission"). The Commission found, in an order dated August 27, 1991, that Officer Wade had "sustained an accidental injury arising out of and in the course of employment," and, as a result, was entitled to temporary total disability benefits for those injuries. Judicial review of that order, which was sought by Montgomery County, came before a jury in the Circuit Court for Montgomery County on November 2, 1994. Following the court's denial of the parties' motions for judgment at the close of all the evidence and its refusal of a number of the County's requested jury instructions, the jury confirmed the Commission's award. The County appealed the judgment on that verdict to the Court of Special Appeals.

---

1. The applicable Maryland Code provisions at the time of the injury at issue here were located in Md.Code (1957), Art. 101, §§ 67(6) and 15, respectively. They were recodified by Chs. 8 and 21 of the Acts of 1991 without substantive change. Throughout this opinion, we shall cite to the recodified provisions.

After the intermediate appellate court affirmed the judgment in an unreported opinion, we granted the County's petition for certiorari.

## II.

Montgomery County police officers are permitted, under certain circumstances and subject to a variety of restrictions, to maintain a personal patrol vehicle, or PPV. According to the County, "[a] PPV is a bargained for benefit of employment available to Montgomery County police officers in the bargaining unit with its use subject to certain guidelines and restrictions." According to the directive of the Montgomery County Police Department, published on July 1, 1985, the PPV program (hereinafter "the program") was established "to provide the highest level of police service to the community by providing greater police visibility on the streets and in the neighborhoods of Montgomery County, and by enhancing the responsiveness of both on-duty and off-duty officers to calls for service." [2] To this end, the program places very stringent procedural and operational regulations upon those who are assigned a vehicle. In operation thereof, the off-duty officers must carry a handgun, handcuffs, and department credentials,

---

**2.** The testimony of Lieutenant Stephen Hargrove, the Commander of the Planning and Policy Management Section of the Montgomery County Police Department, listed seven recognized objectives of the program:

"(1) To increase police protection in Montgomery County by a greater visibility of police, resulting from an increased number of police patrol vehicles on the streets of [the] County;

(2) To promote police-community relations through personal contact and services performed by police officers in transit, as well as within their resident neighborhood;

(3) To deter crime by limiting the opportunity of the criminal to commit the act by the presence of more marked police vehicles;

(4) To provide quicker response time to certain types of calls, and thereby increase the opportunity for apprehending the criminal;

(5) To provide quicker response of off-duty personnel when they are called back to duty because of an emergency;

(6) To provide increased incentive and morale to those officers in the program; and

(7) To provide improved care of the police vehicle, and therefore reduce maintenance and cost per individual responsibility."

and equip the PPV with items such as flares, a fire extinguish-
er, a nightstick, a tactical duty helmet, and a traffic vest and
gloves.[3] They must monitor the police radio, and may make
traffic stops "only when inaction would reflect unfavorably
upon the department." They must "respond to incidents or
calls for service which come to their attention through any of
the following means: (1) on view; (2) citizens[;] (3) radio
monitored activity of a serious nature occurring within reason-
able proximity to their location." After responding to a scene
while operating the PPV off-duty, the officers must complete
an "activity card." A Monthly Activity Summary Report,
Unit/Shift Activity Report, and District PPV Summary must
also be submitted to departmental officials. Further, the
regulations provide that off-duty officers who respond to and
work on an incident receive overtime compensation only for
that period of time in excess of two hours. Other regulations
include prohibitions against taking the vehicle out of the
County without authorization and against utilizing it as a form
of travel to a place of secondary employment. The PPV may
also not be used in furtherance of political activity, and
bumper stickers are prohibited without approval. The partici-
pating officers must further abide by a number of strict
regulations relative to the maintenance of the vehicle, upon
which the County imposes mileage and gasoline constraints.

It is undisputed that a benefit inures to the County by
virtue of this program. The County concedes as much. In-
deed, according to Lt. Hargrove, even while officers are
operating their PPVs for purposes other then responding to a
call for police assistance, they are still providing a police
service, to the extent that the PPV is a visual deterrent to
criminal activity. The question remains, however, whether by
virtue of the benefits the County receives from the program
injuries sustained by participating officers are compensable as
arising out of and in the course of the employment within the

---

**3.** Notably, the officer must carry and/or equip the vehicle with these
items when he or she is on-duty.

meaning of the Workers' Compensation Act. It is to resolution of this query that we address our decision.

### III.

### A.

Under the Workers' Compensation Act (hereinafter "the Act"), a compensable "[a]ccidental personal injury" includes "an accidental injury that arises out of and in the course of employment." LE § 9–101(b)(1).[4] Just what "arises out of" and "in the course of" one's employment has been the subject of considerable dispute, particularly in respect to police officers and other employees who, while not scheduled for duty twenty-four hours a day, in essence must hold themselves ready for duty at a moment's notice by virtue of the nature of their employment. As a threshold matter, ascertaining the nature and extent of an employee's duties is integral to a determination of the compensability *vel non* of an injury; that is to say, what arises out of and in the course of employment is highly dependant upon the precise nature of the employee's duties. Each case requires individual evaluation.

The County disputes that an officer operating a PPV while off duty for personal purposes may sustain any injury that arises out of and in the course of his or her employment. Because Officer Wade was not responding to a call for service or otherwise performing a police function during the time she was using her PPV on September 4, 1988, the County posits, the requisite causal connection between the conditions under which the work is required to be performed and the resulting injury is absent. In other words, "a person who has the benefit of an employer provided vehicle (whatever the employer's motivation) and chooses to use that vehicle for personal

---

4. See also Md.Code (1991 Repl.Vol.), § 9–501(a) of the Labor and Employment Article, which provides, in relevant part, that "each employer of a covered employee shall provide compensation in accordance with this title to: (1) the covered employee for an accidental personal injury sustained by the covered employee."

reasons, is not operating the vehicle in the course of employment." If, however, the County contends, this Court were to determine that there was a sufficient nexus between the employment relationship and its interest in providing PPVs to its police officers such that their use arose out of and in the course of the employment, the reasoning applicable to both the dual purpose doctrine and special errand exception to the "going and coming" rule, while not applicable, would render Officer Wade's injury noncompensable. We do not agree with either proposition.

### B.

The mere occurrence of an accident is an insufficient basis upon which to predicate a workers' compensation claim. Richard P. Gilbert & Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 5.2 (2d ed.1993). The policy of the Act is to compensate only those injuries that are occupationally-related, and not those perils common to all mankind or to which the public is generally exposed. *See Blake Constr. Co. v. Wells,* 245 Md. 282, 289–90, 225 A.2d 857, 862 (1967), and cases cited therein; *Maryland Paper Prods. Co. v. Judson,* 215 Md. 577, 584, 139 A.2d 219, 222 (1958). When a claimant seeks compensation for an accidental personal injury under LE §§ 9–101(b)(1) and 9–501, he or she must demonstrate that it both arose out of *and* in the course of the employment. These two conditions precedent are not synonymous; both must be proven in order to bring the claim within the operation of the Act.[5] *Pariser Bakery v. Koontz,* 239 Md. 586, 590, 212 A.2d 324, 326 (1965).

### 1.

An injury is said to "arise out of" one's employment when it results from some obligation, condition, or incident of

---

5. As pointed out in 1 Arthur Larson, *The Law of Workmen's Compensation* § 6.10 (1996): "Few groups of statutory words in the history of law have had to bear the weight of such a mountain of interpretation as has been heaped upon this slender foundation."

the employment. *Knoche v. Cox,* 282 Md. 447, 455, 385 A.2d 1179, 1183 (1978) (quoting *Department of Correction v. Harris,* 232 Md. 180, 184, 192 A.2d 479, 481 (1963)); *Watson v. Grimm,* 200 Md. 461, 465, 90 A.2d 180, 182 (1952); *Consolidated Eng'g Co. v. Feikin,* 188 Md. 420, 424, 52 A.2d 913, 916 (1947). It is construed to refer to causal origin. 1 Arthur Larson, *The Law of Workmen's Compensation* § 6.10 (1996). That is to say, it "requires a determination whether the injury had its origin in (and is therefore attributable to) the claimant's work environment." Gilbert & Humphreys, *supra* § 5.3 (citing *Harris* ); *see also Rice v. Revere Copper & Brass, Inc.,* 186 Md. 561, 565, 48 A.2d 166, 167–68 (1946) (It refers to the cause or origin of the injury.). In establishing the nexus between the injury and the employment, the claimant must demonstrate that the injury is attributable to some service or act in the employment or is reasonably incident thereto. *Wells,* 245 Md. at 290, 225 A.2d at 862; *see also Feikin,* 188 Md. at 425, 52 A.2d at 916 (It must be apparent to the rational mind that there was a causal connection between the conditions under which the work was required to be performed and the ensuing injury and that it is contemplated as such by a reasonable person familiar with the situation.); *Harris,* 232 Md. at 183–84, 192 A.2d at 481 (The causative danger must be incidental to the nature of the work and not independent of the employment relationship.). Where there is no causal connection between the work and the event giving rise to the injury, then unusual or extraordinary conditions of employment constituting a risk peculiar to the work may establish the requisite causal nexus, either as an unusual cause or acceleration of the injuring event or as a cause of unusual consequences of the event, in which case the injury is said to have arisen out of the employment. *Perdue v. Brittingham,* 186 Md. 393, 402–03, 47 A.2d 491, 495–96 (1946).

■ Officer Wade's use of her PPV on September 4, 1988, was clearly incidental to her role as a patrol officer. The Montgomery County police department established a program whereby its officers were permitted to use their patrol cruisers as personal vehicles when not on regularly scheduled duty.

It attached numerous and detailed regulations to this privilege and encouraged off-duty use of the PPVs in order to, *inter alia*, alleviate budget and staffing concerns and increase police presence throughout the County. Officer Wade would not have been operating a PPV but for her employment and consequent participation in the program. Thus, because her injuries stem from her use of the PPV within the department's guidelines, the requisite causal link exists, and, under these circumstances, those injuries are properly considered to have arisen from her employment.

### 2.

Given that Officer Wade's injuries arose out of her employment, the compensability *vel non* of her claim, therefore, depends upon whether she was acting in the course of her employment at the time of the accident. The "course of employment" test directs our attention to the time, place, and circumstances of the accident in relation to the employment. *Knoche*, 282 Md. at 454–55, 385 A.2d at 1183, *Watson*, 200 Md. at 465, 90 A.2d at 182; *Rice*, 186 Md. at 565, 48 A.2d at 167–68 Larson, *supra* § 6.10. An analysis of the occupational correlation of these factors "demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment." 1 Larson, *supra* § 14.00. Questions pertinent to this inquiry are: 1) when the employment began and ended, 2) whether the continuity of the period was broken, and 3) how far the employee placed himself or herself outside the employment during that period. *Harris*, 232 Md. at 184, 192 A.2d at 481; *see also Watson*, 200 Md. at 466–67, 90 A.2d at 183. Stated otherwise, an injury is in the course of employment when it occurs during the period of employment at a place where the employee reasonably may be in performance of his or her duties and while fulfilling those duties or engaged in something incident thereto. *Id.; see Pariser Bakery*, 239 Md. at 590, 212 A.2d at 326 ("In the course of" refers to an injury occurring while the employee is performing a duty that he or she is employed to perform at a place where

he or she reasonably may be in performance thereof.); *Miller v. Coles,* 232 Md. 522, 527, 194 A.2d 614, 616 (1963) (same) (quoting *Watson,* 200 Md. at 466, 90 A.2d at 183). If the injury occurred at a point where the employee was within the range of dangers associated with the employment, it is held compensable under the Act. When the employer provides the mode of transportation, the predicate for an award of compensation under the Act is even more clear—courts have held that injuries incurred under these circumstances are ordinarily compensable because the employer has broadened the scope of employment by its provision of the transportation. Gilbert & Humphreys, *supra* § 6.6-1 (citing *Watson,* 200 Md. at 469, 90 A.2d at 184). Throughout this analysis, however, it must be borne in mind that "whether a given injury is in the course of the employment is determined by the facts and circumstances of each particular case." *Maryland Cas. Co. v. Insurance Co. of N. Am.,* 248 Md. 704, 707–08, 238 A.2d 88, 90 (1968).

As we have stated, we must necessarily determine the scope of Officer Wade's responsibilities to ascertain whether she was acting pursuant to the employment relationship she maintained with the department at the time of the accident.[6] If she was not performing those duties or engaged in something incident thereto, she may not recover.

As a patrol officer, Officer Wade carried out her duties through the use of a marked police cruiser. As she explained to the circuit court, "Most people work in a building; we [patrol officers] work from our cruiser. That's our office." Incident to that use, the department, by virtue of its unique program, permitted eligible officers to retain possession of the vehicle in furtherance of the objectives it set forth. *See* note

---

6. We note that "[t]he course of employment is . . . confined [neither] to the actual manipulation of the tools of the work, nor to the exact hours of work." 1 Larson, *supra* § 15.11. When discussing a worker's "employment," we look to the actual labor performed as well as the whole period of time or sphere of activities in which the employee is engaged. *Watson v. Grimm,* 200 Md. 461, 466, 90 A.2d 180, 183 (1952); *see also Maryland Cas. Co. v. Insurance Co. of N. Am.,* 248 Md. 704, 708, 238 A.2d 88, 90–91 (1968).

1, *supra.* The department, however, conditioned the use of the PPVs upon adherence to a stringent set of guidelines, which required, *inter alia,* that participating officers equip the vehicles with specified items, monitor the police radio, and "respond to incidents or calls for service." The guidelines, in essence, outline additional responsibilities by which the participating officers are to abide upon penalty of, at minimum, expulsion from the program. Any time Officer Wade placed the vehicle in operation while she was not on scheduled duty, she was bound to act within those guidelines. Taking this view, she may, therefore, properly be considered to have been operating the PPV under the auspices of the department at the time of the accident and, thus, within the course of her employment.

a.

Despite the County's importuning, we find further support for the conclusion of the Court of Special Appeals that Officer Wade's injuries resulted in the course of her employment in the dual purpose doctrine. The doctrine brings within its scope trips that serve both business and personal missions. As explained by Judge Cardozo in *In re Dependents of Marks v. Gray,* 251 N.Y. 90, 93–94, 167 N.E. 181, 183 (1929) (citation omitted):

"If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

*See also Atlantic Refining Co. v. Forrester,* 180 Md. 517, 527, 25 A.2d 667, 671 (1942); 1 Larson, *supra* § 18.12 (citing *Watson, supra* ).

It is undisputed that, in the case *sub judice,* Officer Wade was not on scheduled duty on September 4, 1988, and she was

using the PPV in furtherance of a personal errand—namely, transporting her grandmother to and from her mother's house. That is not to say, however, that her use of the vehicle was purely personal so as to place her without the Act. As the Court of Special Appeals pointed out, under the unique circumstances of this case, where the police department assigned the PPVs, required officer response to certain, specified situations, and encouraged off-duty use of the vehicles—albeit within departmental guidelines—each time Officer Wade and any other participating officer placed the vehicle in operation, a business purpose was being furthered. As gleaned from Lt. Hargrove's testimony, at minimum, the benefit of visual deterrence inured to the County. In fact, Officer Wade testified that she had responded to incidents and calls for service on numerous occasions while off duty. Thus, while arguably the catalyst for Officer Wade's use of the patrol car might have been personal in nature, once she deployed the vehicle on the streets of Montgomery County, any such personal purpose was overridden by the needs of the department, in essence, transforming her errand into one imbued with business aspects. Therefore, because both a business and personal purpose were being served on the day in question, Officer Wade's use of her PPV was within the course of her employment.

Quoting from *Atlantic Refining Co. v. Forrester*, 180 Md. at 526, 25 A.2d at 671, the County states: " 'The mission for the employer must be the major factor or, at least[,] a concurrent cause of the journey, and[,] if it is merely incidental to what the employee was doing in his own benefit, the injury does not arise out of or in the course of the employment.' " (Emphasis omitted). Because Officer Wade was pursuing no business objective in her travel on the day in question, the County reasons, her trip was personal and, therefore, not compensable under the Act. The County, however, ignores that a business purpose—at minimum, a visual deterrent to criminals—is furthered each and every time an officer chooses to employ his or her PPV on the streets of Montgomery County. Certainly, as the County points out, Officer Wade could have used her

personal automobile that day to transport her grandmother. The fact that she did not, or that she had the choice in the first instance, is inapposite and should provide no reason to deny her workers' compensation benefits. She was using the PPV under the department's rules and encouragement, with knowledge that she could be called to service at any moment. This preparedness for duty is sufficient to negate the County's assertion that, to the extent that Officer Wade was pursuing a business purpose on September 4, 1988, it was incidental to her personal mission. Based upon the facts presented, it was her personal use of the vehicle that was incidental to the overriding and primary business purpose of deploying on the County's streets an additional marked police cruiser, which would not have otherwise been there but for the program.

### b.

The facts of the case at bar present a situation more akin to that addressed by the special errand, or special mission, principle.[7] It provides that, in undertaking a journey not normally covered under the Act, it "may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself." 1 Larson, *supra* § 16.11; *see also Alitalia Linee Aeree Italiane v. Tornillo*, 329 Md. 40, 44, 617 A.2d 572, 574 (1993) ("Injuries incurred while the employee travels to or

---

7. The special errand principle is an exception to what is known as the "going and coming" rule. That rule excludes injuries sustained while traveling to or from a place of employment, as falling outside the "course of employment." Authorities reason that the hazards of such travel are ones to which the public at large is exposed while undertaking personal errands and, thus, should not be compensable under the Workers' Compensation Act. Richard P. Gilbert & Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 6.6 (2d ed.1993); *see also Director of Finance v. Alford*, 270 Md. 355, 359, 311 A.2d 412, 414 (1973) ("Well established, in respect of the application of Workmen's Compensation acts, is the general rule that if an employee is injured while going to work or returning therefrom his injury cannot be said to have arisen out of or in the course of his employment.").

from work in performing a special mission or errand for the employer are . . . compensable."). This exception was early recognized in this State in *Reisinger–Siehler Co. v. Perry,* 165 Md. 191, 167 A. 51 (1933). There, an employee, scheduled to work at his employer's store between 6:00 a.m. and 6:00 p.m., was also subject to call at any time after 6:00 p.m. to handle any unusual conditions that might have arisen there. On the evening in question, the employee responded to a call from police and went to the store to discover the lights on and the back door ajar. He secured the location and, on his way home, was struck by an automobile. The award of workers' compensation was affirmed by the trial court. In affirming the trial court's judgment, we stated, in language particularly instructive and singularly applicable to the case *sub judice:*

> "[I]t could hardly be said that [ ]his employment, for which he was to be remunerated, would cover only the period for which he was actually at work in or about the store. The work that he was called upon to do under these circumstances differs greatly from the regular employment of one employed at regular hours at a given place, and who at the expiration of the period of his work is free to serve himself as he pleases.
>
> There was, we think, an implied agreement, from the nature and character of the employment of the claimant in the performance of additional duties, that his employment was not to be restricted to the time in which he was at work at the store on such occasions. It was in the nature of an errand or mission on behalf of his employer, and when so treated his employment commenced at the time when he left his home to go to the store, and ended when he returned to his home."

*Id.* at 199, 167 A. at 53–54; *see also Alford,* 270 Md. at 360–62, 311 A.2d at 415–16; *Maryland Paper Prods.,* 215 Md. at 585, 139 A.2d at 223.

The same may be said of Officer Wade. Although not required to utilize her PPV while off duty, such use was encouraged by the department, which benefitted from, among

other things, the increased police presence in the County.[8] Upon entry into the vehicle, Officer Wade was required to abide by the program's numerous regulations. She was required to stop in particular circumstances or in response to calls for service. The duties and responsibilities concomitant to use of a PPV are in addition to those expected of a nonparticipating officer. As in *Perry*, this fact in no way lessens the work-related nature of a participating officer's use of a PPV. As we have stated, to the extent that Officer Wade used her PPV while not on regularly scheduled duty, she was, in effect, working. We, therefore, disagree with the County that the actual activity in which she was engaged at the time of the accident is dispositive of her claims. We explain.

The County reasons that, based upon our prior decision in *Police Comm'r v. King*, 219 Md. 127, 148 A.2d 562 (1959), because Officer Wade was not performing a police duty at any time up to or at the time of the accident on September 4, 1988, her injuries do not fall within the operation of the Act. As we have indicated, an officer utilizing a PPV off duty is performing a police function. The County seems to intimate that, if the "work" being performed is not required, injuries sustained in performance thereof are not compensable, for failing to satisfy the requisite nexus. Certainly, a participating officer is not required to use the PPV while off duty, but the County developed the program precisely for such use in furtherance of its objectives, *supra* note 1. By its assertions and assessment of the compensability of Officer Wade's claim, the County appears affirmatively to disregard the department's motivation in providing the vehicles to the officers in the first instance. This belies traditional analysis of what is considered to be within the course of employment. Thus, while the

---

8. Indeed, the benefit received by the Montgomery County Police Department by PPV operation is arguably greater than that received by the store owner in *Reisinger–Siehler Co. v. Perry*, 165 Md. 191, 167 A. 51 (1933)—that is, an off-duty officer operating a PPV and responding to a call is not remunerated before two hours have elapsed. In effect, any stop executed by a participating officer is a part of that officer's regular employment before the expiration of those two hours.

County may be correct in stating that its off-duty officers are not required to operate their PPVs while off duty, if and when they do, they are performing a police function and should be compensated under the Act for any injuries sustained pursuant thereto.

## C.

For the foregoing reasons, we hold that the Court of Special Appeals properly rejected the County's assignment of error regarding the compensability *vel non* of Officer Wade's claim. We similarly reject the County's invitation to follow those decisions by foreign jurisdictions that have held, under comparable circumstances, that the injuries are not compensable under workers' compensation statutes because they did not arise out of and in the course of employment. *See, e.g., Kunze v. City of Columbus Police Department,* 74 Ohio App.3d 742, 600 N.E.2d 697 (1991); *Palm Beach County Sheriff's Office v. Ginn,* 570 So.2d 1059 (Fla.App.1990); *Westberry v. Town of Cape Elizabeth,* 492 A.2d 888 (Me.1985); *Wolland v. Industrial Comm'n,* 91 Ill.2d 58, 61 Ill.Dec. 535, 434 N.E.2d 1132 (1982); *In re De Jesus v. New York State Police,* 95 A.D.2d 454, 467 N.Y.S.2d 916 (1983); *Rogers v. Industrial Comm'n,* 40 Colo.App. 313, 574 P.2d 116 (1978); *Walker v. State Accident Ins. Fund,* 28 Or.App. 127, 558 P.2d 1270 (1977); *Kansas City, Missouri Police Dep't v. Bradshaw,* 606 S.W.2d 227 (Mo.App.1980); *Chambo v. City of Detroit,* 83 Mich.App. 623, 269 N.W.2d 243 (1978). Because the PPV program and the regulations to which it holds its participating officers are specific to Montgomery County, the case law cited by the County is inapposite.

## IV.

The County also assigns error to the circuit court's refusal of one of its proposed jury instructions. Regarding what constitutes a claim arising out of and in the course of employment, the court instructed the jury as follows:

"An accidental injury is defined as one which results from some unusual strain or exertion of the employee, or some unusual condition of the employment. An injury arises out of the employment if the injury results from some obligation, condition, or incident of the employment. An injury arises in the course of employment if it happens during a period of employment, at a place where the employee may reasonably be and while he or she is performing his or her work, or some other activity reasonably related to his or her work."

The County contends that the "unique factual scenario and legal premise" of the case rendered the above instruction inadequate. It proffered the following instruction, which, it claims, more adequately addressed "the area which is the primary concern of this appeal"—namely, whether Officer Wade's injuries incurred during the use of her PPV for a personal errand while not on scheduled duty both arose out of and in the course of her employment as a patrol officer:

"In order for Claimant Wade to be compensated for her injury by Montgomery County, she must show that her injury both arose out of and in the course of her employment. The terms 'out of' and 'in the course of' are not synonymous.

An injury arises out of the claimant's employment when it results from some obligation, condition or incident of [her] employment. Whether it does must be decided from the facts and circumstances of each individual case. There must be a causal connection between the conditions under which the work is required to be performed and the ensuing injury. Thus, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment. However, it does not include an injury which cannot be traced to the employment as a contributing, proximate cause and which comes from a hazard to which the [worker] would have been exposed away from the employment.

An injury arises in the course of employment when it happens during the period of employment at a place where the employee reasonably may be in performance of [her] duties 'and while [she] is fulfilling those duties or engaged in something incident thereto.' "

Parties are "entitled to have the jury fairly instructed upon their theory of the case." *Aleshire v. State ex rel. Dearstone*, 225 Md. 355, 370, 170 A.2d 758, 765 (1961). To this end, the trial court may instruct the jury on the law either by granting requested instructions and/or by giving instructions of its own on particular issues, but it need not grant any requested instruction if the matter is fairly covered by instructions actually given. *Sergeant Co. v. Pickett*, 285 Md. 186, 193, 401 A.2d 651, 655 (1979); *see also* Md. Rule 2–520(c), 4–325(c). "A proposed instruction that is a ' "correct exposition of the law," ' that is ' "applicable in light of the evidence before the jury," ' and is not ' "fairly covered by the instructions actually given," ' must be given." *CSX Transp., Inc. v. Continental Ins. Co.*, 343 Md. 216, 240, 680 A.2d 1082, 1094 (1996) (citations omitted). "Jury instructions are sufficient if they fully and fairly cover the law." *Oken v. State*, 343 Md. 256, 280, 681 A.2d 30, 41 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997); *see also Molesworth v. Brandon*, 341 Md. 621, 640–41, 672 A.2d 608, 618 (1996) ("The court is not required ... to read a requested instruction 'if the matter is fairly covered by instructions actually given.' " (quoting Md. Rule 2–520(c); *Kennelly v. Burgess*, 337 Md. 562, 577, 654 A.2d 1335, 1342 (1995))).

The County avers that the trial court's refusal of its instruction deprived the jury of the opportunity "to determine whether Wade's off-duty operation of her PPV on a personal errand could have been found to have arisen out of her employment as a patrol officer." Based upon the unique circumstances presented, the County continues, the instruction it proffered was warranted and the trial court's refusal to read the instruction "gave insufficient guidance to the jury to the detriment of the County." Be that as it may, we hold that the

Court of Special Appeals properly concluded that the court's instruction "not only adequately, but more clearly, conveyed the law in this area." Indeed, the trial court used the precise language recommended by Maryland Civil Pattern Jury Instruction No. 30:6 (Md. State Bar Association, 2d ed.) in describing the concepts of arising out of and in the course of employment. It is hard to see how instructing the jury in the manner suggested by the County would have added any benefit to the jury's deliberations.

*JUDGMENT AFFIRMED; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*