## MAYOR AND CITY COUNCIL OF BALTIMORE v. THEODORE E. JAKELSKI

[No. 662, September Term, 1979.]

*Decided February 13, 1980.*

The cause was argued before GILBERT, C. J., and THOMPSON and LOWE, JJ.

*L. William Gawlik, Assistant Solicitor for Baltimore City,* with whom were *Benjamin L. Brown, City Solicitor, William Hughes, Associate Solicitor,* and *Sheldon H. Press, Chief Assistant Solicitor,* on the brief, for appellant.

**8**

*Irving Schwartzman* for appellee.

LOWE, J., delivered the opinion of the Court.

Baltimore City Police Officer Theodore Jakelski was scheduled to appear in traffic court once each month to testify in regard to traffic citations previously issued. On July 15, 1976, he was scheduled to appear at 2:00 p.m. and, following his appearance, was to report for roll call at 3:30 p.m. assigned to the Northeast District. The officer was compensated by the hour for his courtroom appearances and while usually credited with a minimum of two hours, actual time was recorded by "punching" a clock provided at the traffic court.

While en route to the court from his home on July 15, 1976, Officer Jakelski was involved in an accident which caused disabling injuries. He filed for workmen's compensation benefits (Md. Code, Art. 101), but was denied his claim by the Workmen's Compensation Commission. Indicating that this case gave rise to

> "[s]trictly a legal question; something to be stipulated and go up on a very inexpensive appeal, to have some Court rule on this decision, so we'll have some sort of direction,"

the Commissioner presiding decided that the accident was not compensable, having occurred before the officer was on duty.

> "I find, however, there is not an accidental injury arising out of and in the course of the employment, because of the fact that the Claimant is to be paid from the time he punches in; and the time I assume when you punch out."

The officer took the Commissioner's advice and appealed to the Baltimore City Court which decided the case on the record.

Presumably because testifying in traffic court was a routine part of the officer's duties, the trial judge found that

> "he [Jakelski] was on duty and that this accident happened in the course of his duty,"

thereby reversing the Commission. The court did not, however, address the factual concern that the officer's accident occurred while in his private vehicle before he arrived at traffic court. This becomes crucial in light of what is euphemistically referred to as the "going and coming" rule. That rule provides generally that an employee is not covered by the Workmen's Compensation Statute if his injuries are received on public streets while going to or from work. *Md. Paper Products Co. v. Judson,* 215 Md. 577, 583-584 (1958). This is so because such an injury evolves from a peril which is " 'common to all mankind, or to which the public at large is exposed.' " *Ibid.*

Several modifications of that rule have arisen in the form of exceptions and it is among these that appellee Jakelski must seek surcease from the rule's effect if we are to be convinced that the trial judge was correct. The rule does not apply, for example, where the employer provides transportation, *Harrison v. Central Con. Co.,* 135 Md. 170 (1919), or where an employee is in such immediate proximity to his employment that he is considered to be in the course of that employment. *Judson, supra.* Indeed, the Court of Appeals indicates that each modification case must be dealt with upon its own facts, *id.* at 584, and that seems the only justification for some of the exceptions which have been considered. In *Weston-Dodson Co. v. Carl,* 156 Md. 535 (1929), a salesman, having completed his calls, was returning home to make business-related telephone calls. When he was injured en route, it was held compensable. In *Coats & Clark's Sales v. Stewart,* 39 Md. App. 10 (1978), an employee injured while grocery shopping for a baby-sitter, necessary to enable him to attend a company party, was compensated because he was on a "special errand or mission". The special errand or mission exception gives rise to another euphemism known as the "special errand (or mission) rule", although strictly speaking

10

it is itself an exception to the "going and coming" rule. Professor Larsen's *Workmen's Compensation Law*, § 16.10 at 4-123, best expresses that exception which was first recognized in Maryland in *Reisinger-Siehler Co. v. Perry*, 165 Md. 191 (1933).

"The special errand rule may be stated as follows: When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself." (Footnote omitted).

Two cases dealing with death or disability benefits for injuries arising out of employment were preoccupied with that exception in the factual context of Baltimore City police officers.[1]

In *Dir. of Finance v. Alford*, 270 Md. 355 (1973), the officer-employee was called to come to work early during an emergency period when all policemen on the force had been alerted " 'to keep themselves available' to be called back 'on emergency status' ". On his way to the station, he was involved in an automobile accident which resulted in his disability. The Court held that the facts fell within the "special mission" rule, and that the accident was compensable, even though the employee was on his way to work. The elements emphasized in implementing this "rule" were the existence of a state of emergency during which he was on a constant alert basis, that reporting was obligatory

---

[1]. Although neither case involves workmen's compensation, the issues involved were identical, *i.e.*, whether injury or death occurred "out of and in the course of the actual performance of duty." The compensation sought was in the form of special disability retirement benefits and death benefits if death or injury occurred while in discharge of duty.

and that he was obliged to put in a full shift plus the time added by the early arrival.

The officer-employee in *Police Comm'r v. King,* 219 Md. 127 (1959), had not yet begun his journey to work, nor was there a declared emergency in being. He was dressing for work and received an accidental, though fatal, gunshot wound from his own service revolver. The Court held that since the police officer was off duty at the time of the accident, his beneficiaries were not entitled to the payment from either of two statutory special funds for deceased members of the force killed "while in the actual performance of duty" or in consequence of injuries received "while in the discharge of duty."

Neither case provides Officer Jakelski a route by which he may circumvent the "going and coming" rule. *King* offers him naught by way of fact, law or result. *Alford,* on the other hand, seems at first blush to offer hope, but when carefully read is authority to the contrary. The emphasis placed upon the emergency conditions, stand by orders and obligatory recall indicate that a duty-related trip made regularly in the course of duty is not a "special errand". We do not find an officer whose duties indicate a monthly court attendance to be on a "special errand" because he must report to a courthouse rather than to a station house to commence his duties.

*Alford's* emphasis upon the emergency, and the immediacy of the obligatory recall, provided the route to the "special errand" exception in that case; however, as pointed out,

> "[f]uture cases quite likely will present a variety of factual situations which will make difficult the determination of the precise time the employee actually had embarked upon the special mission. Obviously they will have to be dealt with on a case by case basis." *Id.* at 364.

See also *Judson, supra* at 584. In this case it is clear that Jakelski *never* embarked upon a special errand or mission; he was en route to a regularly repetitive performance of one of

his many duties. This regular course of monthly conduct [2] also distinguishes this case from *Coats, supra,* upon which appellant also heavily relies. As appellant points out in his brief, both *Coats* and *Alford* involved journeys that were irregular or unusual. The trial judge here factually found that court appearances by the officer were a part of Jakelski's regular duties:

"Well, gentlemen, I don't have any difficulty with this matter. I don't think Officer Jakelski can be compared to an average citizen going to testify in Traffic Court of the Traffic Division of the District Court. Ordinary citizens, the average citizens, don't handle accident cases. It is not their duty to investigate accident cases. They issue summonses for accident cases, it is the officer's duty to do that and in furtherance of that duty, it is his duty also in the opinion of the Court, obviously, that he has to appear as a witness in either the Traffic Division of the District Court or in answer to a summons if there should be civil litigation thereafter pertianing [sic] to that accident. You can just imagine what would happen if it was not considered part of his duty. Then Officers could say, well, they don't have to go to Traffic Court and testify to cases they have handled. It is not their obligation to. Of course, they can't do that. It is their obligation and responsibility to testify in court. They are not in Traffic Court in response to a summons issued by any of the parties. The officer is the one who inspires the proceeding that brought about the Traffic Court appearance in the first place by issuance of summons to parties who were involved in the accident that he believes should be summonsed for the Traffic Court Judge to

2. Appellant testified unequivocally in that regard:

"I'm assigned to a Traffic Court schedule once a month, 2 p.m., Courtroom 3 at the time, the accident occurred approximately 1:30, 1:35. Due to living in Harford County, I usually leave early and get to Traffic Court as soon as I can. Formerly, I arrive twenty-five of and quarter of before the hour."

> determine who, if either or not both, were guilty of violation of the Motor Vehicle Laws. It is as simple as that. I find very clearly he was on duty and that this accident happened in the course of his duty. Therefore, the decision of the Workmen's Compensation Commission is reversed."

But that factual finding contradicts his legal conclusion. We are concerned more with appellee in transit than his status upon arrival. Thus, if the court appearance had been an isolated obligation, the journey to testify might well have been a special errand or mission; however, since such appearances were a regular duty, periodically to be performed, the journey from home to place of employment is not a special errand. Officer Jakelski was "going to" work when he was injured. Like most of us, his employment commenced only after he arrived, not while he was on his way there.

*Alford, supra,* also teaches negatively another lesson which responds to appellee's alternative argument, *i.e.,* that

> "[t]he Appellee was on twenty-four hour duty, and subject to call to official duty whenever the need for official action arose."

If police officers are considered to be on duty and in the course of their employment twenty-four hours a day simply by nature of their position, there would have been no need for the emphasized distinguishing factors in *Alford* of emergency conditions, stand-by alert and obligation to invoke the special mission exception. Beyond that, were such the intent of the Court of Appeals, *King* could not have lost his case — whenever he was killed — so long as the death was accidental. We must reverse the trial court which reversed the commission.

It is apparent then that the court's conclusion,

> "I find very clearly he was on duty and that this accident happened in the course of his duty",

is clearly erroneous. Md. Rule 1086. The parties conceded

that he was in transit to the courthouse where he was regularly compelled to attend on a monthly basis and had not arrived. What is more he made no claim either that transportation was provided, *Harrison, supra,* or that he was in the immediate proximity of his employment, *Judson, supra.*

> *Judgment reversed.*
> *Costs to be paid by appellee.*