REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1691

SEPTEMBER TERM, 2014

---

STATE OF MARYLAND

v.

OLIVER O. OKAFOR

---

Eyler, Deborah, S.,
Nazarian,
Moylan, Charles E., Jr.
     (Retired, Specially Assigned),

JJ.

---

Opinion by Eyler, Deborah, S., J.

---

Filed:  October 2, 2015

Oliver O. Okafor, the appellee, is employed as a Trooper First Class by the Maryland State Police ("MSP"), an agency of the State of Maryland, the appellant. On January 25, 2013, while in uniform and driving to work in his own car, Trooper Okafor was involved in an automobile accident and sustained personal injuries.

After Trooper Okafor successfully pursued a claim for benefits against the State before the Workers' Compensation Commission ("Commission"), the State brought an action for judicial review in the Circuit Court for Baltimore County. It filed a motion for summary judgment, which was denied. The case was tried to a jury, which found that Trooper Okafor had sustained an accidental injury arising out of and in the course of his employment. Judgment was entered, and the State filed a timely motion for judgment notwithstanding the verdict or new trial. The court denied the motion and this appeal followed.

The State presents two questions for review, which we have combined and rephrased as follows:

> Did the circuit court err by declining to rule as a matter of law that Trooper Okafor's accidental injury did not arise out of and in the course of his employment?[1]

---

[1] The questions as framed by the State are:

    I.     Did the Circuit Court err in denying summary judgment to the Employer and by affirming the decision of the Commission dated July 15, 2013, which found that Claimant sustained an accidental injury arising out of and in the course of his employment?

    II.    Did the Circuit Court err in denying judgment notwithstanding the verdict to the Employer and by affirming the decision of the

(Continued…)

For the reasons to follow, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

At the relevant time, Trooper Okafor was working at the Forestville barrack, in Prince George's County, and was living in Great Mills, St. Mary's County, 50 miles away.

It is the policy of the MSP to assign each Trooper a patrol car to use during work hours and also when off duty, including when driving to and from work. On January 24, 2013, the day before the accident, Trooper Okafor was working the 2 p.m. to midnight shift. He drove his patrol car to work and used it during work. Late in the shift, it began to experience engine problems. He drove it to the College Park barrack, which houses the repair facility for all patrol cars belonging to the MSP. Repair facility workers determined that Trooper Okafor's patrol car needed to be left there for repair.

Trooper Okafor routinely kept his personal vehicle, a 2008 Nissan Sentra, at the College Park barrack. By the time he dropped his patrol car off it was the end of his shift. He drove his Sentra home.

The next day, January 25, 2013, Trooper Okafor again was scheduled to work the 2 p.m. to midnight shift, at the Forestville barrack. He got up and dressed in his uniform, complete with service revolver, baton, hand radio, handcuffs, badge, and all required

---

(…continued)
  Commission dated July 15, 2013, which found that Claimant sustained an accidental injury arising out of and in the course of his employment?

2

medals and insignia. He left home in his Sentra and began the drive to the Forestville barrack. The Sentra was not fitted with a police radio, sirens, or any other police equipment. Trooper Okafor's hand radio, which he wore on his shoulder, had a limited range of communication.

Trooper Okafor was running late for work. At 1:53 p.m., his Sentra was clipped by another vehicle; the impact caused Trooper Okafor to lose control of the Sentra, which left the roadway and collided with a tree. The site of the accident was about 35 miles from the Forestville barrack. Trooper Okafor sustained injuries and was transported to a hospital for treatment.

On February 20, 2013, Trooper Okafor filed a claim for benefits with the Commission. The State filed contesting issues. A hearing was held on May 22, 2013. On July 15, 2013, the Commission issued an order that, as relevant, found that Trooper Okafor had sustained an accidental injury arising out of and in the course of his employment and that his claim was not barred by the "going and coming rule." The Commission awarded Trooper Okafor temporary total disability benefits and medical expenses.

As noted, the State brought an action for judicial review challenging the award. After the parties engaged in discovery, the State filed a motion for summary judgment, which was denied. A jury trial was held on July 30, 2014. Two witnesses testified: Trooper Okafor and Lieutenant Roland Butler, who at the time of the accident was Trooper Okafor's supervisor.

Trooper Okafor, called adversely by the State, testified about the events as we have recounted them. He stated that, when he dropped his patrol car off at the College Park barrack for repair on January 24, 2013, it was almost midnight and there were no other patrol cars available at that location for him to use.

Trooper Okafor explained that when he is driving his own car, as opposed to a patrol car, he may arrest anyone he sees committing a felony, and he may stop and render aid if he happens upon an accident or other situation in which people need help. He may not make traffic stops, write tickets, or pursue vehicles in a chase.

Lieutenant Butler also was called by the State. His testimony largely was consistent with Trooper Okafor's. He agreed that a Trooper driving his personal vehicle is not permitted to exercise police powers except to make an arrest upon witnessing a felony or to render aid. He acknowledged that when a Trooper who is off duty but in uniform and driving his personal vehicle gets out of his vehicle, for instance to stop at a convenience store, he is a "billboard" for the Maryland State Police and, "in a sense," is providing a service to the citizens of Maryland. He stated that a Trooper driving his own vehicle to work is not entitled to reimbursement for the cost of gasoline.

Lieutenant Butler did not testify that there was a patrol car available for Trooper Okafor to take upon turning his patrol car in at the College Park barrack late at night on January 24, 2013. He stated, however, that Troopers who turn their patrol cars in for repair often will contact other Troopers who are off duty or on vacation to borrow one of their patrol cars. He estimated that there were nine Troopers in the area of the College Park barrack from whom Trooper Okafor could have borrowed a patrol car that night.

4

At the close of the State's case, both parties moved for judgment. The court denied the motions. Trooper Okafor then incorporated his own testimony and that of Lieutenant Butler into his case, moved the Commission's order into evidence, and rested. The State renewed its motion for judgment, but the court reserved ruling on it.

By special verdict, the jurors found that Trooper Okafor had sustained an accidental injury arising out of and in the course of his employment. As noted, after judgment was entered affirming the Commission's order in favor of Trooper Okafor, the State filed a motion for judgment notwithstanding the verdict or for new trial, which was denied.

## DISCUSSION

### (A)

Under the Maryland Workers' Compensation Act ("the Act"), "[w]hen [an employee] seeks compensation for an accidental personal injury under [Md. Code (1999, 2008 Repl. Vol.), section 9-101(b)(1) of the Labor and Employment Article ("LE")] and [LE section 9-501], he or she must demonstrate that it both arose out of *and* in the course of the employment." *Montgomery Cty. v. Wade*, 345 Md. 1, 9 (1997) (emphasis in original).

"An injury arises out of employment when it results from some obligation, condition, or incident of employment." *Livering v. Richardson's Restaurant*, 374 Md. 566, 574 (2003). Thus, "[a]rising out of" refers "to the causal connection between the employment and the injury" sustained. *Roberts v. Montgomery Cty.*, 436 Md. 591, 604 (2014). *See also* Arthur Larson, *Workers' Compensation Law* § 3.05 (2015) ("An injury

5

arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed [the employee] in the position where he or she was injured.") (emphasis in original). An injury does not arise out of the employment if, absent additional facts, "the causative hazard is a common peril to which the public-at-large is exposed, not just the [employee.]" Richard Gilbert et al., *Maryland Workers' Compensation Handbook* § 5.04 (4th ed. 2013) (citations omitted).

Whether an injury occurred "in the course of" employment is a function of the "time, place, and circumstances of the accident in relation to the employment." *Roberts*, 436 Md. at 604; *Livering*, 374 Md. at 577. An injury occurs in the course of employment when it happens "during the period of employment at a place where the employee reasonably may be in performance of his or her duties and while fulfilling those duties or engaged in something incident thereto." *Wade*, 345 Md. at 11. In deciding whether an injury occurred in the course of employment, "the entire sphere and period of employment may be considered and also whether the employee has placed himself outside his employment, and, if so, how far." *Knoche v. Cox,* 282 Md. 447, 454 (1978) (citations omitted). This is a fact-specific inquiry. *Md. Cas. Co. v. Ins. Co. of N. Am.*, 248 Md. 704, 708 (1968).

Maryland case law is clear that an injury sustained by an employee while commuting to or from work is "not considered to arise out of and in the course of employment" and therefore is not compensable. *Roberts,* 436 Md. at 606; *Morris v. Bd. of Educ. of Prince George's Cty.,* 339 Md. 374, 379 (1995); *see also Rumple v. The Henry H. Meyer Co., Inc.,* 208 Md. 350, 357 (1955). This settled law is known as the

6

"going and coming rule." Its premise is that "hazards encountered by an employee while commuting to work are common to all workers, no matter what their job, and hence, such risks cannot be directly attributable to a person's particular employment." *Morris*, 339 Md. at 380.

Over the years, the Maryland appellate courts have recognized several exceptions to the going and coming rule. In *Board of County Commissioners v. Vache*, 349 Md. 526, 532 (1998), the Court of Appeals identified four primary exceptions. We shall discuss two of them–the free transportation and the special errand exceptions–*infra*. The other two are the proximity exception and an exception for employee travel on a public street between two areas of the employer's premises.[2] Additionally, there is the "own conveyance exception," which applies when the employer requires the employee to furnish his or her own vehicle for work, *see Morris*, 339 Md. at 383; the "employer conveyance exception," which applies when the employer controls the means of transportation the employee uses to drive to and from work, *see Watson v. Grimm*, 200 Md. 461 (1952); and the "dual purpose exception," which we also shall discuss *infra*.

Outside the ambit of the going and coming rule and its exceptions, the Court of Appeals has held that injuries sustained by an off duty police officer driving an assigned patrol car on a personal errand arise out of and in the course of employment when the

---

[2] The "proximity exception" "allows compensation for an injury sustained off-premises, but while the employee is exposed to a peculiar or abnormal degree to a danger which is annexed as a risk incident to the employment." *Vache*, at 532 (citing *Pariser Bakery v. Koontz*, 239 Md. 586, 591 (1965)).

primary purpose of driving the patrol car is to benefit the employer police department. *Wade*, 345 Md. 14.

**(B)**

The State contends the undisputed material facts entitled it to judgment as a matter of law, and therefore the court should have granted his motion for summary judgment, his motion for judgment at the close of the evidence, or his motion for judgment notwithstanding the verdict. *See* Md. Rules 2-501, 2-519, and 2-532. It argues that Trooper Okafor was driving to work in his own car when the accident happened, so under the going and coming rule his injuries were not compensable, and none of the exceptions to that rule applied. And, because Trooper Okafor did not exercise his police powers during the ride, either by stopping a felony in progress or rendering aid, his drive to work was not for the benefit of the MSP, and consequently the *Wade* case does not support a finding that his injuries arose out of and in the course of his employment.

In the factual portion of his brief, Trooper Okafor mentions that all of the exceptions to the going and coming rule applied. His argument focuses on *Wade*, however. He maintains that because he could have taken action, albeit limited, to exercise his police powers during the drive to work, and he was in uniform, he was acting to the benefit of the MSP, and therefore his injuries were compensable. He emphasizes, moreover, that the Commission's decision that his injuries arose out of and in the course of his employment was in evidence, and for that reason that issue was not subject to decision as a matter of law.

8

The State relies heavily on *Mayor and City Council of Baltimore v. Jakelski*, 45 Md. App. 7 (1980)*,* to support its arguments on appeal.  We believe that reliance to be misplaced.  Before explaining why, we must discuss the free transportation exception to the going and coming rule.

The free transportation exception first was recognized by the Court of Appeals in *Harrison v. Central Construction Co.*, 135 Md. 170 (1919).  There, the employer contracted with its employees to provide free train transportation from Baltimore City, where they lived, to its construction site in northeastern Baltimore County, where they worked.  One day, the employee in question was injured when he was attempting to get on the free train.  He applied to the Commission for compensation, unsuccessfully.  The circuit court upheld the denial.

The Court of Appeals reversed, holding that the going and coming rule did not preclude the employee from receiving benefits.  The Court explained:

> [W]here the workman is employed to work at a certain place, and as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation to or from his work the period of service continues during the time of transportation, and if an injury occurs during the course of transportation it is held to have arisen out of and in the course of the employment.

135 Md. at 177-78.

In *Ryan v. Kasakeris*, 38 Md. App. 317 (1977), this Court comprehensively analyzed the body of free transportation cases that developed after *Harrison*.  The issue in *Ryan* was whether injuries a cleaning lady suffered while crossing the street from her

bus stop to the house of the family who employed her were compensable. When the cleaning lady first was employed by the family, the wife drove her to and from work every work day. That arrangement later became unmanageable because it conflicted with the wife's child care responsibilities. To accommodate the family, the arrangement was changed so the cleaning lady would ride the bus to and from work and the family would pay for her bus transportation.

We gleaned from our analysis of the free transportation exception cases that the terms of the employment contract dictate whether the exception will apply. We explained:

> [A]n injury occurring while an employee is on his way to or from work, which otherwise would be noncompensable as being the result of normal hazards unconnected with the employment, becomes compensable only if, under the terms of the employment, the employer is under some obligation to provide the transportation to the employee. ***It is that underlying obligation which brings the travel within the scope of the employment.*** Where that obligation exists, the method of carrying it out becomes irrelevant; but where it does not exist, there is no coverage under this exception.

38 Md. App. at 328–29 (emphasis added). We cautioned that the employer's mere reimbursement of the employee's transportation expenses is not, in and of itself, sufficient to extend coverage to the period of travel to and from work; rather, there must be an obligation under the employment agreement for the employer to furnish transportation to and from work. The contractual obligation may be performed by paying for transportation costs, but payment of those costs without such an underlying obligation does not trigger the free transportation exception.

In light of the employment agreement between the cleaning lady and her employer family, we held that the free transportation exception applied. From the outset, the family had agreed to provide the cleaning lady with transportation to and from work as part of her employment. The mode of transportation only was changed from car to bus for the family's convenience. The family's payment for bus fare was not merely a reimbursement but was the means by which it performed its contractual obligation to provide the cleaning lady free transportation.

We concluded, moreover, that the fact that the cleaning lady was injured after she got off the bus and while she was walking from the bus stop to the family's house did not take her injuries out of the free transportation exception.

> The very rationale of the "free transportation" doctrine is that the travel is part of the employment, that the day's employment therefore commences when the employee starts on the course of his journey, and that the employee is performing his job-related duties while in transit. Upon that premise, at least from the time [the cleaning lady] stepped on the bus, she was in the course of her day's employment. That being so, [the cleaning lady], during the course of her walk from the bus stop to the [family's] home, was "at a place where (s)he reasonably may be in the performance of (her) duties." If she was working for [the family] while she was riding the bus, she was also working for [the family] when crossing the street.

*Id*. at 333-34 (quoting *Pariser Bakery v. Koontz*, 239 Md. 586, 590 (1965)) (footnotes omitted).

In *Maryland Casualty. Co. v. Lorkovic*, 100 Md. App. 333 (1994), we were faced with the question whether the going and coming rule precluded the employee from receiving workers' compensation benefits for injuries he sustained in an automobile accident while he was driving his own car from the airport to his house after a business

11

trip. The evidence showed that it was the employer's policy to pay all the travel expenses the employee incurred while he was on business trips, including airfare and mileage to and from his home and the airport. We concluded that this policy and the employer's history of making these payments was "a sufficient 'custom of the employer' to infer that [the employer] agreed to provide transportation for [the employee] at the time of his accident." *Id*. at 356 (quoting *Watson*, 200 Md. at 470). Therefore, the employer's injuries were compensable under the free transportation exception to the going and coming rule.

We return to *Jakelski*, which, as noted, the State maintains fully supports its position that Trooper Okafor's injuries were not compensable, as a matter of law. In that case, an officer employed by the Baltimore City Police Department ("BPD") regularly appeared in court once a month, in the morning, to testify about citations he had issued. On those mornings, he dressed in his uniform and drove to the courthouse in his own car. Upon arriving, he "punched" a time clock, and was paid starting at that time. *Id*. at 8.

On the day in question, the officer was driving to the courthouse to testify when he was injured in an automobile accident. He filed a claim for benefits with the Commission. The Commission denied the claim, ruling that because the officer's injuries were sustained before he "punched" in at the courthouse they did not arise out of and in the course of his employment. The circuit court reversed (although it is not clear on what grounds).

On appeal to this Court, the BPD argued that the going and coming rule precluded an award of compensation. The officer responded that the "special errand" exception to

that rule applied. That exception, first recognized in *Reisinger-Siehler Co. v. Perry*, 165 Md. 191 (1933), is as follows:

> When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

*Jakelski*, 45 Md. App. at 10 (citations omitted). In cases involving police officer employees, the existence of an emergency situation, the obligation to report, and the period of time the obligation to report lasts are relevant to whether the officer is on a special errand. *Dir. of Fin. v. Alford*, 270 Md. 355, 363 (1973). If an officer is under no special duty to report, injuries sustained while preparing for a regularly scheduled shift are not compensable. *See Police Comm'r v. King*, 219 Md. 127 (1959) (holding that beneficiaries of police officer who sustained a fatal wound when his service weapon accidentally discharged while he was getting dressed for work were not entitled to compensation).

We held in *Jakelski* that the special errand exception did not apply. Focusing our analysis on the police officer's status while he was in transit to the courthouse, not after he would have arrived at the courthouse, we observed that, "[l]ike most of us, [the officer's] employment commenced only after he arrived, not while he was on his way there" and hence his injuries did not arise out of and in the course of his employment. *Jakelski*, 45 Md. App. at 13. We made clear that police officers do not enjoy unfettered coverage under the Act simply because they are considered "on duty" 24-hours a day.

13

*Jakelski* does not support the State's position in this case. To be sure, Trooper Okafor was driving to work when the accident happened, so the going and coming rule was implicated, and there was no evidence that he was on a special errand, within the meaning of the special errand exception. The holding in *Jakelski* would support a similar holding here that the special errand exception did not apply. It does not support a conclusion that no other exception to the going and coming rule would apply in this case, however.

There is a significant distinction between *Jakelski* and this case that is relevant to the free transportation exception to the going and coming rule. In *Jakelski*, there was no evidence of any agreement by the BPD to furnish its officers free transportation to and from work. On the day of the accident, the officer was driving his own vehicle to work, as he always did. Here, by contrast, it was undisputed that the MSP followed a policy of assigning patrol cars to Troopers for them to use at work and also to drive to and from work. The MSP paid for these patrol cars and supplied the gasoline necessary to drive them. So, contrary to the State's argument, the holding in *Jakelski* does not dictate that whenever a law enforcement officer suffers injuries while driving his personal vehicle to work, the going and coming rule applies. Rather, it leaves open the question whether the free transportation exception to that rule may apply in some circumstances to a uniformed police officer injured while driving his personal vehicle to work.

As noted, Trooper Okafor makes mention of the exceptions to the going and coming rule in his brief, but relies primarily upon *Wade,* 345 Md. 1, to support his position that his injuries were compensable. In *Wade*, an officer employed by the

14

Montgomery County Police Department ("MCPD") was driving her patrol car when she was injured in an automobile accident. She was not on duty. In fact, she was off duty, dressed in street clothes, and running a personal errand.

The evidence showed that the MCPD had adopted a comprehensive program, with a multitude of restrictions and guidelines, by which "its officers were permitted to use their patrol cruisers as personal vehicles when not on regularly scheduled duty." 345 Md. at 10. Among other things, officers participating in the program were required to carry a handgun, handcuffs, and credentials while off-duty; equip their patrol cars with "items such as flares, a fire extinguisher, a nightstick, a tactical duty helmet, and a traffic vest and gloves"; monitor their police radios and make traffic stops if not doing so would "reflect unfavorably on the department"; respond to certain types of calls or incidents brought to their attention in specified ways; and complete post-incident and monthly activity reports. *Id*. at 6–7. They did not receive overtime pay for the first two hours spent responding to a call or incident. They only could take their patrol cars outside the county with special permission; they could not use them for transportation to secondary employment or to further political activity; and they were prohibited from placing bumper stickers on them. A participating officer who failed to follow the restrictions and guidelines would face, "at minimum, expulsion from the program." *Id.* at 13.

The MCPD's purpose in adopting the program was to "provide the highest level of police service to the community by providing greater police visibility . . . and by enhancing the responsiveness of both on-duty and off-duty officers to calls for service." *Id*. at 6. Thus, the program provided a benefit to the MCPD.

15

The officer in question was a participant in the program and, when the accident happened, was driving her patrol car in accordance with the program's restrictions and guidelines. She filed a claim with the Commission, which found that she had sustained an injury "arising out of and in the course of employment" and awarded her compensation. A jury in the circuit court affirmed the Commission's decision, and, in an unreported opinion, this Court affirmed.

The Court of Appeals granted the County's petition for a writ of *certiorari* to decide whether "by virtue of the benefits the County receives from the program, injuries sustained by the participating officers are compensable as arising out of and in the course of the employment within the meaning of the . . . Act." *Id.* at 7–8. The Court answered that question in the affirmative. It reasoned that the officer's injuries arose out of her employment because she would not have been driving her patrol car "but for her employment and consequent participation in the program." *Id.* at 11. And, because the program conferred a privilege on participating officers that advanced the MCPD's goal of increasing police presence in the county, and the officer was bound by the requirements of the program when driving her patrol car, "she may, therefore, properly be considered to have been operating the [patrol car] under the auspices of the [MCPD] at the time of the accident and, thus, within the course of her employment." *Id*. at 13.

The going and coming rule had no application in *Wade* because the officer was not driving to or from work when she was injured. Nevertheless, the MCPD argued that the reasoning underlying the dual purpose and special errand exceptions to that rule was of broader application, and militated against a finding that the officer's injuries arose out of

16

and in the course of her employment. The Court addressed that argument and reached the opposite conclusion.

The Court explained that the dual purpose exception "brings within its scope trips that serve both business and personal missions," *id.*, and applies when "'[t]he mission for the employer [is] the major factor or, at least, a concurrent cause of the journey,'" and is not "'merely incidental to what the employee was doing for his own benefit.'" *Id.* at 14 (quoting *Atlantic Refining Co. v. Forrestor*, 180 Md. 517, 526 (1942)). In other words, an employee's injuries arise out of and in the course of his employment when they are sustained while he is on a trip that has a work *and* personal purpose, so long as the work purpose is primary and the personal purpose is incidental. The *Wade* Court reasoned that because, as a program participant, the officer had to be ready at any moment to be called into service "her personal use of the vehicle . . . was incidental to the overriding and primary business purpose of deploying on the County's streets an additional marked police cruiser[.]" *Wade*, 345 Md. at 15.

Likewise, because, as a program participant, the officer was undertaking duties and responsibilities "in addition to those expected of a nonparticipating officer" when she was off duty but driving her patrol car, to the benefit of the MCPD, her status was akin to being on a special errand or mission for the MCPD at those times. *Id*. at 17. Thus, "to the extent that [she] used her [patrol car] while not on regularly scheduled duty, she was, in effect, working," and the injuries she sustained in that circumstance arose out of and in the course of her employment. *Id*.

17

**(D)**

The context in which Trooper Okafor sustained his injuries–driving to work–dictates that we start from the default position that his injuries were not compensable under the going and coming rule. The Commission found that the going and coming rule did not preclude compensation, *i.e.*, that, under the circumstances, an exception to the going and coming rule applied. That decision was in evidence, and the jury was entitled to consider it and give it weight. The State only would have been entitled to judgment as a matter of law if there was no reasonable factual basis whatsoever for a rational decision by the Commission or a jury that an exception to the going and coming rule applied.

Trooper Okafor's argument based on *Wade* is, in essence, a dual purpose exception argument. He posits that, even though he was driving his own vehicle to work when the accident happened, the purpose of his journey was two-fold: to travel from home to work (a personal purpose) and to create a police presence on the road, to the benefit of the MSP (a business purpose). He emphasizes that he could exercise certain police powers even though he was not driving a patrol car (as we have explained) and that, because he was wearing his uniform, other drivers who saw him behind the wheel would be deterred from committing crimes such as speeding or drinking alcohol while driving. He also points to Lieutenant Butler's testimony that a uniformed Trooper in public, outside any vehicle, is a "billboard" for the MSP.

At oral argument, in response to questions from the Court, counsel for both parties agreed that the police powers that may be exercised by an officer in uniform but in a private car rather than a patrol car are the same as the police powers that may be

18

exercised by an officer in street clothes and in a private car. In other words, the critical distinction between when an officer can exercise full police powers, as opposed to limited police powers, is his presence in a patrol car. Thus, in regard to exercising police powers, it made no difference whether Trooper Okafor was wearing his uniform.

We do not doubt that some drivers and passengers, upon seeing a uniformed law enforcement officer behind the wheel of an ordinary vehicle, would be inclined not to speed or to commit a crime in plain sight. At most, this is a marginal increase in police presence, altogether unlike the increase in police presence accomplished by adding patrol cars to the roads. Police cruisers are immediately identifiable as police presence and are highly visible to a large number of people, which is what makes their presence an effective deterrent to crime. A uniformed officer driving an ordinary vehicle does not generate any such level of police presence. Most drivers and passengers on the road will not notice that a vehicle that is not marked as law enforcement is being driven by a uniformed officer, unless they are directly next to the officer's vehicle and happen to look at it.

In addition, the patrol vehicle program in *Wade* benefitted the MCPD beyond the deterrent effect of an increase in police presence. The participating officers were armed, their patrol cars were fully equipped, and they were expected to exercise broad police powers at all times when driving their patrol cars. The officers were effectively on duty, even when they were off duty. Even when on private errands, the police officers participating in the program were acting primarily for the benefit of the MCPD. The same cannot be said here. As mentioned, any benefit to the MSP from Trooper Okafor

wearing his uniform while driving his own vehicle was slight. The primary purpose of his trip was to get to work, not to advance the law enforcement crime fighting goals of the MSP. The dual purpose exception did not apply.

We conclude, however, that the evidence readily could support a finding that the free transportation exception applied. As explained, that exception arises from the employment agreement, specifically, from an agreement by the employer to furnish free transportation to the employee to and from work. The agreement can be express or implied by custom. Here, it was undisputed that the MSP's policy and custom was to furnish its Troopers patrol cars to drive to and from work. The MSP paid for the patrol cars, for their upkeep, and for the gasoline needed to drive them. A rational finder of fact could conclude from that evidence that the terms of Trooper Okafor's employment agreement with the MSP included the provision of free transportation to and from work, by means of a patrol car furnished and paid for by the MSP.

Of course, in this case, although the MSP furnished Trooper Okafor free transportation to and from work, he was not making use of it when he was injured. His free transportation—his patrol car—was out of service due to engine problems and was being repaired at the MSP repair facility. The State maintains that, because Trooper Okafor was driving his own car instead of the patrol car provided by the MSP, he was in the same position as the police officer in *Jakelski*. This argument overlooks the evidence of an agreement to provide free transportation in this case and is inconsistent with this Court's holding in *Ryan*.

20

*Ryan* and the other free transportation exception cases establish that when an employer has obligated itself to provide an employee free transportation to and from work the employee's work day starts when his commute to work starts (and ends when his commute home ends). Consequently, an accidental personal injury suffered by the employee during his commute arises out of and in the course of his employment, and the going and coming rule does not apply. Moreover, as the holding in *Ryan* makes clear, injuries sustained during the employee's commute arise out of and in the course of employment even when the free transportation furnished by the employer is not being used. In *Ryan*, the free transportation exception applied to the injuries the cleaning lady sustained when she was not on the bus (her free transportation) but was walking from her bus stop to her place of employment because her work day started when she began her commute. It did not matter that she was not making use of her free transportation when she was injured. What mattered was that her work day already had started.

In the case at bar, the evidence supported a finding that Trooper Okafor's employment agreement included free transportation to and from work, and therefore his work day began when his commute to work began. The agreement did not change from day to day depending upon whether Trooper Okafor actually used the free transportation the MSP promised him. The agreement remained constant and governed the start of Trooper Okafor's work day. Because Trooper Okafor's work day started when he left his house to drive to the Forestville barrack in his Sentra, the injuries he sustained during that commute arose out of and in the course of his employment. Given the state of the

21

evidence, including the Commission's finding in Trooper Okafor's favor, the State was

not entitled to judgment in its favor as a matter of law.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTYAFFIRMED. COSTS TO BE PAID THE APPELLANT.**