REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2614

September Term, 2014

_____

PRINCE GEORGE'S COUNTY,
MARYLAND

v.

MELVIN PROCTOR

_____

Graeff,
Leahy,
Kenney, James A., III
   (Retired, Specially Assigned),

JJ.

_____

Opinion by Leahy, J.

_____

Filed:  July 26, 2016

On his day off work, Prince George's County police detective Melvin Proctor (Appellee) was injured when he jumped to the side to avoid knocking over his two-year old son as he and his family were walking out the front door of their home. On December 14, 2012, Det. Proctor filed a claim with the Workers' Compensation Commission ("WCC") contending he was injured while on call and performing a special errand incident to his employment because he left his home with the intention of picking up his assigned police cruiser from the county fleet maintenance facility that day. On December 27, 2012, the Prince George's County Executive and County Council ("Appellant," the "County"), acting in their capacity as employer and insurer, filed a statement of contesting issues with the WCC. The County maintained that Det. Proctor's injuries did not arise out of the course of his employment and were non-compensable.

On May 29, 2013, the WCC disallowed Det. Proctor's claim. After a hearing on judicial review in the Circuit Court for Prince George's County, the court entered its memorandum opinion and order on January 15, 2015, reversing the WCC's decision. The County filed a notice of appeal to this Court on February 6, 2015. The County presents just one issue: "[w]hether the circuit court erred when it determined that Appellee's injuries arose out of and in the course of his employment."

Considering the "'time, place, and circumstances of the accident in relation to the employment,'" *State v. Okafor*, 225 Md. App. 279, 286 (2015) (citation omitted), we agree with the WCC's determination that Det. Proctor's injury "did not arise out of and in the course of employment as alleged to have occurred on September 17, 2012[,]" where it occurred on his own front porch, while he was off duty, and before embarking on any task

incident to his employment as a police officer. Accordingly, in a situation in which Det. Proctor's injuries arose prior to embarking on any work-related journey, the "going and coming" rule is not what bars Det. Proctor's claim, and we need not address the exceptions to the "going and coming" rule. We hold that the circuit court erred in its determination that, under the facts of this case, the positional-risk test necessitated overruling the decision of the WCC.

## BACKGROUND

On the date of injury, September 17, 2012, Det. Proctor was employed by the Prince George's County Police Department as a detective with the robbery suppression team.[1] Det. Proctor was on vacation the week preceding the injury, and during this time his assigned police cruiser was at the County's automotive repair facility for scheduled maintenance. Det. Proctor was not scheduled to return to work until Wednesday, September 19; however, on Monday, September 17, he called fleet maintenance to determine whether his vehicle was ready for pick-up.

According to his testimony before the WCC, when Det. Proctor was informed that his cruiser was ready, he asked his wife to drop him off so he could pick up the cruiser. Det. Proctor was injured as he exited his home. Describing the accident to the WCC, Det. Proctor stated:

> I walked out the front door with my wife and kids. My two year-old-son -- we were stepping off the front porch -- he inadvertently stepped in front of me. I looked down.

---

[1] Det. Proctor retired from the Prince George's County Police Department in February 2013.

Instead of knocking him off the front porch, I jumped to the side to avoid knocking him off the front porch and rolled my ankle, tore ligaments on the inside and outside of my ankle, and sprained my knee.

On December 14, 2012, Det. Proctor filed a claim for worker's compensation benefits with the WCC, which the County contested. The WCC hearing was held on May 14, 2013. Before the WCC Commissioner, Det. Proctor testified that, as a member of the robbery suppression team, he worked a normal schedule but was on call during off hours. Det. Proctor related:

> We have a three man rotation with primary, secondary and back-up. If a robbery goes out after hours, which, literally between 24 hours a day, we're called in. The primary goes in, he assesses the situation, he makes a notification to the supervisor, the sergeant, or myself by county cell phone.
> All members of my squad are issued County cell phones.

> * * *

> Once we're notified of the robbery, then we assess how much support, manpower is needed. Oftentimes, it depends on the gravity of the situation, when there's a shooting involved, the whole squad wouldn't be called in. Even though they're not on the checkout/call-out sheet. By doing that, we have to have our county cruisers and be available to respond in.

> * * *

> We were required to get our cruisers back as soon as possible by the County fleet maintenance system, because . . . there's only a limited number of spaces on the lots . . . the County mandates that once our cruisers are done, to make sure we pick them up in a timely manner.
> Secondly, I need[ed] my cruiser because I had switched out call-out days with another detective for my being on vacation the previous week. So I was up, I believe, it's No. 2 on the call-out list.

Det. Proctor argued that the accident should be compensable as occurring during a "special errand" because Det. Proctor was on call and needed to have his county vehicle to respond, if necessary. The County maintained that, because the accident occurred in front of Det.

3

Proctor's home before he had retrieved the cruiser, the special errands exception should not apply.

On May 29, 2013, the WCC found that Det. Proctor's injury "did not arise out of and in the course of employment as alleged to have occurred on September 17, 2012," and disallowed the claim.

On June 12, 2013, Det. Proctor filed a petition for judicial review. At the September 30, 2014 hearing in the circuit court, the parties agreed that there was no dispute as to the facts of the case and resolved to determine the legal issue through cross-motions for summary judgment.

Det. Proctor argued that there were two ways to find compensability in this case. First, Det. Proctor argued that, as a police officer, he was "on call 24/7," and it did not matter that he was technically off duty at the time of the injury. Second, Det. Proctor maintained that picking up his assigned vehicle from the repair facility qualified as a "special errand" because Det. Proctor's purpose in leaving his home at the time of his injury was solely to perform a necessary work-related errand.

The County argued that a duty—no matter how infrequently that duty is performed (such as retrieving a cruiser from the repair facility)—does not rise to the level of a special errand under the relevant case law. Further, the County maintained that even in cases where a police officer "had to hold himself in readiness for emergency duty 24 hours a day . . . [,] benefits [are] not payable unless there [i]s some causal connection between his [injury] and his duty as a police man." Thus, the County argued that because Det. Proctor

4

was off duty, acting "under no other guidance [ex]cept his own," and was right outside his own home when the injury occurred, the accident was non-compensable.

On January 15, 2015, the circuit court entered its memorandum opinion and order reversing the WCC's ruling. The court concluded that Det. Proctor's actions "were arising out of and in the course of his employment when he was injured." The circuit court stated that

> because [Det. Proctor] was a second responder that day, he needed his cruiser in case he was called in[]to work. Therefore, [Det. Proctor] arranged for his wife and child to drive him to fleet maintenance so that he could retrieve his vehicle. While walking to the car to travel to fleet maintenance, [Det. Proctor] was injured. Therefore, pursuant to the positional risk test, [Det. Proctor] would not have been injured but for the fact that he was retrieving his police cruiser from fleet maintenance, as required by his employer.

The County filed a timely notice of appeal on February 6, 2015.

## DISCUSSION

On judicial review, a decision of the WCC is "entitled to [a presumption of] prima facie correctness[.]" *Prince George's Cnty. v. Minor*, 227 Md. App. 233, slip op. at 5 (2016) (alteration in *Minor*) (quoting *Frank v. Balt. Cnty.,* 284 Md. 655, 658 (1979)). "A court, therefore, may reverse a commission ruling only upon a finding that its action was based upon an erroneous construction of the law or facts[.]" *Frank*, 284 Md. at 658. However, where the sole issue presented is one of law, we review the decision *de novo* without deference to the decisions of either the WCC or the circuit court. *Long v. Injured Workers' Ins. Fund*, 225 Md. App. 48, 57 (2015) (citing *Gross v. Sessinghause & Ostergaard, Inc.*, 331 Md. 37, 45-48 (1993)).

5

On appeal, the County argues that Det. Proctor's injury did not arise out of or occur in the course of Det. Proctor's employment as a police officer. Rather, the County asserts that Det. Proctor "was not participating in any law enforcement work-related activity" and "was not [] under any directive or order from his chain of command to retrieve [his] cruiser," at the time of his injury. Thus, the County argues that the injury was "too attenuated from Appellee's employment" and the claim is not compensable. The County also argues that the circuit court erred in extending the "positional-risk test" beyond "matters involving employees on travel." In the alternative, the County maintains that the "going and coming" rule requires reversal of the circuit court's decision.

Det. Proctor argues that, because a "Detective is on-call and working 24-hours, 7 days a week[,]" and, at the time the injury occurred the County was receiving a benefit from his actions, his injuries arose out of his employment and are compensable. Regarding the "going and coming" rule, Det. Proctor maintains that he is covered under both the free transportation exception and the special errand exception.

## A. Arising Out of and In the Course of Employment

The law requires that "each employer of a covered employee shall provide compensation" to a covered employee for an accidental personal injury "regardless of fault as to a cause of the accidental personal injury." Maryland Code (1991, 2008 Repl. Vol.), Labor and Employment Article ("LE"), § 9-501. In the context of a workers' compensation claim, LE § 9-101(b)(1) provides that "accidental personal injury" means "an accidental injury that arises out of and in the course of employment."

6

An injury arises out of employment when there is a causal connection between the employment and the injury such that the injury "results from some obligation, condition, or incident of employment." *Livering v. Richardson's Rest.*, 374 Md. 566, 574 (2003) (citing *Montgomery County v. Wade,* 345 Md. 1, 9 (1997)). "The phrase 'arises out of requires . . . that the injury be incidental to the employment, such that it was by reason of the employment that the employee was exposed to the risk resulting in the injury.'" *Id.* at 574-75 (quoting *Mulready v. University Research Corp.,* 360 Md. 51, 57 (2000)).

"An injury occurs in the course of employment when it happens 'during the period of employment at a place where the employee reasonably may be in performance of his or her duties and while fulfilling those duties or engaged in something incident thereto.'" *Okafor*, 225 Md. App. at 286 (quoting *Wade*, 345 Md. at 11). "In deciding whether an injury occurred in the course of employment, 'the entire sphere and period of employment may be considered and also whether the employee has placed himself outside his employment, and, if so, how far.'" *Id.* (quoting *Knoche v. Cox,* 282 Md. 447, 454 (1978)). Regarding the factors to be considered, in *Wade,* the Court of Appeals instructed:

> An analysis of the occupational correlation of these factors 'demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment.' Questions pertinent to this inquiry are: 1) **when the employment began and ended**, 2) whether the continuity of the period was broken, and 3) how far the employee placed himself or herself outside the employment during that period. Stated otherwise, an injury is in the course of employment when it occurs during the period of employment at a place where the employee reasonably may be in performance of his or her duties and while fulfilling those duties or engaged in something incident thereto. **If the injury occurred at a point where the employee was within the range of dangers associated with the employment, it is held compensable under the Act.**

345 Md. at 11-12 (emphasis added) (citations omitted).

Although "course of employment" is not strictly limited to the actual labor or to the precise hours of work, it is "generally taken for granted that workers' compensation was not intended to protect against all the perils of th[e] journey" between home and work. 2 Arthur Larson, *Workers' Compensation Law* § 13.01 (2015). Injury to a worker that occurs *before* that journey has begun falls outside the course of employment.

In *Police Commissioner of Baltimore City v. King*, the Court of Appeals addressed whether death benefits available through various funds were payable to the beneficiaries of a deceased Baltimore City Police officer. 219 Md. 127, 129 (1959). The officer in *King* had been watching television with his son on the first floor of their home and went upstairs to get ready to report for duty. *Id.* at 130. After about five minutes the officer started down the steps, partially dressed and "carrying his shirt, tie, cap, keys, claw and gun." *Id.* As the officer descended the stairway, his service weapon accidentally discharged, and he was fatally wounded. *Id.* Addressing the scope of the phrase "in the actual performance of duty" the Court stated:

> It is also true that we have recognized a striking analogy between the terms 'in the actual performance of duty' and 'out of and in the course of his employment.' *Rumple v. Henry H. Meyer Co., Inc.*, 208 Md. 350, 357, 118 A.2d 486, 488 [(1955)]. The appellee cites, with some enthusiasm, the case of *Heaps v. Cobb*, 185 Md. 372, 45 A.2d 73 [(1945)], but we shall not consider it at length since it turned upon the well-established principle that when an employer furnishes free transportation to and from work to an employee, the employee is deemed to be on duty during transportation. There is no similar situation here. We have consistently recognized the general rule that injuries sustained by employees while going to or returning from their regular place of work do not 'arise out of and in the course of their employment,' but in this case we are requested to hold that one who is

8

dressing himself prior to starting on his trip to work is 'in the actual performance of duty' or 'in the discharge of duty.' We think this would extend the rule entirely too far.

* * *

As Patrolman King was off-duty and not performing or discharging any actual police duty at the time of his unfortunate accident, we must hold that he was not in the actual performance of discharge of duty.

*Id.* at 134-36 (footnote omitted). Although the Court recognized that police officers are required "to hold themselves in readiness for emergency duty," it was clear that the officer in *King* was not on duty nor was he responding to an emergency at the time of his injury in his home. *Id.* at 133-34.[2] Thus, the Court declined to extend the concept "out of and in the course of his employment" to include an accident "prior to starting on his trip to work." *Id.* at 135.

In the case before us, Det. Proctor had been on vacation the week preceding the injury, and he was not scheduled to return to work for another two days. Det. Proctor's testimony before the WCC revealed that he was injured on his front porch while exiting his home with his wife and children. Although Det. Proctor's testimony reflects that he was preparing to make the journey to retrieve his police cruiser from the county repair facility, he had not yet embarked on that journey, and he was not subject to any directive

---

[2] This Court in *Mayor & City Council of Baltimore v. Jakelski*, a workers' compensation case, looked to *King* in its analysis of whether an officer had embarked on a "special errand" that fell within the course of his employment. 45 Md. App. 7, 11 (1980). The Court noted that "[t]he officer-employee in [*King*], had not yet begun his journey to work, nor was there a declared emergency in being[,]" and that *King* "offered [Jakelski] naught by way of fact, law or result" in his effort to assert that his injuries arose out of his employment. *Id.*

to retrieve the cruiser on the date of injury.  As we reiterated in *Okafor*, "[w]hether an injury occurred 'in the course of' employment is a function of the 'time, place, and circumstances of the accident in relation to the employment.'"  225 Md. App. at 286 (citations omitted).

Here, as in *King*, Det. Proctor "was off-duty and not performing or discharging any actual police duty at the time of his unfortunate accident[.]"  *See King*, 219 Md. at 136.  Looking to the pertinent question of "when the employment began and ended," we cannot say that Det. Proctor's injury occurred "within the time and space boundaries of the employment."  *See Wade,* 345 Md. at 11.  Rather, Appellee's injury occurred on his own front porch, while he was not on duty, and while he was "not performing or discharging any actual police duty at the time of his unfortunate accident."  *King*, 219 Md. at 136.  We disagree that a fall on Det. Proctor's own front porch was "within the range of dangers associated with [his] employment."  *See Wade*, 345 Md. at 12.  Accordingly, we agree with the WCC's determination that Det. Proctor's injury "did not arise out of and in the course of employment as alleged to have occurred on September 17, 2012."

### B.  The Going and Coming Rule

"Maryland case law is clear that an injury sustained by an employee while commuting to or from work is 'not considered to arise out of and in the course of employment' and therefore is not compensable."  *Okafor*, 225 Md. App. 286-87 (citations omitted).  "This settled law is known as the 'going and coming rule.'"  *Id.*  The County maintains that the "going and coming" rule requires that the circuit court be reversed.  In response, Det. Proctor argues that the free transportation and/or special errand exceptions

10

to that rule apply to this case. Because Det. Proctor's injuries in this case arose before he embarked on any work-related journey, the "going and coming" rule is not what bars Det. Proctor's claim. We shall not speculate whether any exception to that rule might apply to a journey that had not yet begun.

### C. The Positional-Risk Test

Finally, the County argues that the circuit court erred in extending the "positional-risk test" beyond "matters involving employees on travel." In its memorandum opinion and order, the circuit court stated:

> The day of the injury, [Det. Proctor] was on his regularly scheduled day off; however, he was the second responder for his unit. [Det. Proctor's] police cruiser was at fleet maintenance for its preventative maintenance and he received a call that day that work on his vehicle was completed. [The County] requires its employees to retrieve their cruisers from county fleet maintenance as soon as possible due to a limited amount of space at fleet maintenance. Further, because [Det. Proctor] was a second responder that day, he needed his cruiser in case he was called in[]to work. Therefore, [Det. Proctor] arranged for his wife and child to drive him to fleet maintenance so that he could retrieve his vehicle. While walking to the car to travel to fleet maintenance, he was injured. Therefore, pursuant to the positional risk test, [Det. Proctor] would not have been injured but for the fact that he was retrieving his police cruiser from fleet maintenance, as required by his employer.

Maryland adopted the "positional-risk test" in *Mulready v. University Research Corp.,* 360 Md. 51, 66 (2000). In *Mulready*, a traveling employee was injured when she slipped and fell in her hotel bathtub. *Id.* at 53. The Court of Appeals first noted that

> [e]mployees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.

11

*Id.* at 54-55 (quoting 2 A. Larson & L.K. Larson, *Larson's Workers' Compensation Law* § 25.01 (2000)). Thus, the matter before the Court was whether this broad "traveling employee" rule should apply to cover, for example, "'injuries due to slipping in the bathtub in a hotel, cutting oneself with a razor, or being hurt while getting a haircut or calling for one's laundry.'" *Id.* at 59 (citation omitted). Accordingly, the Court sought to establish a proper test for determining "arising out of" causation for traveling employee cases and stated:

> **Absent facts indicating a distinct departure by the employee on a personal errand that would not be in the contemplation of the parties, an injury to a traveling employee generally is compensable so long as it occurred as a result of an activity reasonably incidental to the travel that the employer required.** Thus, even injuries suffered by traveling employees as a result of common perils of everyday life or as a result of purportedly personal acts generally are compensable. Inasmuch as, under ordinary circumstances, a traveling employee's eating and bathing are reasonably incidental to the travel required by the employer, injuries resulting from these activities are compensable. Reverting to the terminology that we have used to describe the cases reviewed above, the rule which we adopt is substantially the positional-risk test . . . .

*Id.* at 66 (emphasis added).

The Court of Appeals, in *Livering v. Richardson's Restaurant*, refined the positional-risk test to focus the inquiry on whether the injury would have been sustained "but for" the fact that the conditions and obligations of employment placed the employee where the injury occurred. 374 Md. at 575 (citation omitted). In *Livering*, the claimant was injured when she slipped and fell "on a day off but while checking her work schedule at her place of employment." *Id.* at 571. Under the facts of *Livering*, the Court determined that "by unexpectedly changing the work schedule, the employer impliedly required

12

employees constantly to be aware of it[,]" and "[c]hecking her schedule was therefore incident to [the claimant's] employment." *Id.* at 580. However, the Court also looked for a clear nexus between the alleged work-related activity and the injury. The Court stated:

> [The claimant] would not have been injured but for the fact that she visited the restaurant to confirm her schedule. Not only was she checking her schedule at the time of the injury, but **she also was hurt on the restaurant's premises. There is a clear nexus between her work and the injury. Because appellant's injury occurred on the employer's premises while performing, and as a result of, a task incident to her employment, we hold that her injury arose out of and in the course of employment.**

*Id.* at 580 (emphasis added).

The Court of Appeals applied the positional-risk test again more recently in *Roberts v. Montgomery County*, 436 Md. 591 (2014). In *Roberts*, a firefighter was assigned to "light duty" as a result of a prior injury. *Id.* at 595-96. While on light duty, he worked four ten-hour shifts per week from 7 a.m. to 5 p.m. and was encouraged to engage in two hours of physical training per shift, while on the clock. *Id.* at 596. Although during light duty Mr. Roberts was assigned Department Headquarters as his duty station, he would occasionally stop by his regular duty station, Fire Station 19, to pick up work-related mail and interoffice memoranda. *Id.* Mr. Roberts was injured in a traffic accident while traveling from physical training to Fire Station 19 to retrieve his mail. *Id.* at 596-97. The Court noted that the County had conceded that Mr. Roberts's physical training was work-related. *Id.* at 606. The Court also determined that, because mail was left for Mr. Roberts at Fire Station 19 and his supervisors were aware of his practice of picking it up, the County had "'acquiesced' in Mr. Roberts's act of gathering the mail at Fire Station 19." *Id.* at 606-07. The Court concluded:

13

> Mr. Roberts, thus, was **en route from a work-related activity to a site where he was to engage in a work-related act**, to which the employer acquiesced. His travel, therefore, was incidental to his employment. Travel incidental to employment cannot be excluded from coverage by application of the going and coming rule. As a result, the injury he sustained is covered by the Workers' Compensation Act, because "but for" his travel between work-related sites he would not have been injured.

*Id.* at 607 (emphasis added) (footnote omitted).

Notwithstanding the recognition in both *Livering* and *Roberts* that the positional-risk test applies beyond circumstances involving an employee on work-related overnight travel, the inquiry remains focused on whether the injury would have been sustained, "but for" the fact that the conditions and obligations of employment placed the employee where the injury occurred. *See Roberts*, 436 Md. at 607. Here, unlike in *Livering*, Det. Proctor was not injured on his employer's premises while actively performing a task incident to his employment. *See Livering*, 374 Md. at 580. Unlike *Roberts*, Det. Proctor was not injured while on duty and en route from one work-related task to another. *See Roberts*, 436 Md. at 607. In both *Livering* and *Roberts* it was clear that, but for a task incident to their employment, the employees would not have been in the location where the injury occurred. The same cannot be said in the present case.

It cannot reasonably be said that, but for the need to retrieve his police cruiser, Det. Proctor would not be at his home on his day off stepping through the front door onto his front porch. *See Roberts*, 436 Md. at 605 ("The positional-risk test is adduced generally in the situation where an employee is injured *while engaging in activities incidental to employment*." (emphasis added) (citation omitted)); *Doe v. Buccini Pollin Grp., Inc.*, 201 Md. App. 409, 422 (2011) (stating that the positional-risk test "supports compensation, for

14

. . . situations in which the only connection of the employment with the injury is that its obligations *placed the employee in the particular place at the particular time when he or she was injured . . . .*" (emphasis added) (citation omitted)). Under the facts of this case, the circuit court's application of the positional-risk test was incorrect. We agree with the WCC's determination that Det. Proctor's injury "did not arise out of and in the course of employment as alleged to have occurred on September 17, 2012[,]" and we reverse the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTION TO ENTER AN ORDER AFFIRMING THE DECISION OF THE WORKERS' COMPENSATION COMMISSION.**

**COSTS TO BE PAID BY APPELLEE.**